OLIN CORPORATION, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

Fifth District   No. 76-316

Opinion filed October 18, 1977.—Rehearing denied December 13, 1977.

Randall Robertson, of Lueders, Robertson & Konzen, of Granite City, and Thomas B. Martin, Corporation Counsel, of East Alton, for petitioner.

William J. Scott, Attorney General, of Springfield (Steven Watts and Russell R. Eggert, Assistant Attorneys General, of counsel), for respondents.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

This is an appeal from proceedings before the Illinois Pollution Control Board pursuant to sections 29 and 41 of the Illinois Environmental

Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1029, 1041). Petitioner, Olin Corporation, seeks direct review in this court of an order of the Pollution Control Board entered on June 3, 1976. This case concerns copper discharges into the East Fork and the Main Channel of the Wood River by an industrial plant operated by Olin in East Alton, Illinois. The contested order of June 3, 1976, granted Olin a variance from the Board's water quality standards for copper discharges, denied Olin's request for a permit for construction of a collection and water treatment system, and refused Olin's request to classify the lower portion of the east fork and the main channel of the Wood River as a Secondary Contact and Indigenous Aquatic Life Water under Pollution Control Board Rule 302(k).

Although several issues are raised by Olin's petition for review of the Pollution Control Board Order the primary and dispositive issue of the case concerns the appropriate interpretation of Pollution Control Board Rule 302(k). Board Rule 301 provides that:

"All waters of the State of Illinois are designated for general use except those designated as Secondary Contact and Indigenous Aquatic Life Waters."

Rule 302 provides in pertinent part that:

"Secondary Contact and Indigenous Aquatic Life Waters are those waters which would be appropriate for all secondary contact uses and which will be capable of supporting an indigenous aquatic life limited only by the physical configuration of the body of water characteristics and origin of the water and the presence of contaminants in the amounts that do not exceed the applicable standards."

The Rule then designates several specific bodies of water classified by the Board as secondary contact waters and contains a final provision, Section (k), which provides that in addition to the specifically identified waters, secondary contact waters shall include "all waters in which by reason of low flow or other conditions a diversified aquatic biota cannot be satisfactorily maintained even in the absence of contaminants."

Rules 301 and 302 essentially determine the applicability of the Board's water quality standards. The standards applicable to general use water are more strict than those applicable to secondary use water. Olin is meeting all applicable general use standards at its plant in East Alton with the exception of the copper standard.

The contested order of the Pollution Control Board dismissed Olin's request to recognize the east fork and main channel of the Wood River as secondary contact water pursuant to Pollution Control Board Rule 302(k) on the ground that such a determination can only be made in a regulatory proceeding. Since Olin made this request in the context of a variance and permit proceeding, it thus failed to comply with the requirements of the

regulatory procedure. Olin contends that Rule 302(k) is self-executing; that it establishes criteria by which the Pollution Control Board and Environmental Protection Agency can recognize specific bodies of water as meeting the requirements of Rule 302(k) without the necessity of a regulatory proceeding. For the reasons specified below we concur in the Pollution Control Board's construction of Rule 302(k) as requiring a regulatory proceeding and affirm the Board's dismissal of Olin's petition.

■■■ It is a well-settled rule in Illinois that an administrative action taken under statutory authority will not be disturbed unless clearly arbitrary, unreasonable or capricious. (*Illinois Coal Operators Association v. Pollution Control Board*, 59 Ill. 2d 305, 319 N.E.2d 782.) Petitioner, however, does not challenge the factual basis of the Board's decision but raises the legal question of whether the Board correctly interpreted its regulation number 302(k). The interpretation and construction of the rules of an administrative agency generally are governed by the same rules applicable to statutes in the same field. (See *Rucker v. Wabash R.R. Co.* (7th Cir. 1969), 418 F.2d 146.) In construing an administrative rule or regulation a reviewing court must necessarily look to the construction given the rule by the agency. Although the construction of statutes and rules by an administrative agency is not binding on the courts such construction should be persuasive. (*Hardway v. Board of Education*, 1 Ill. App. 3d 298, 274 N.E.2d 273.) The court should accord substantial weight to the agency's construction and actual application of its own rule and should not interfere unless the agency's interpretation is plainly erroneous or inconsistent with long settled constructions. *Scheffki v. Board of Fire & Police Commissioners*, 23 Ill. App. 3d 971, 320 N.E.2d 371.

The Pollution Control Board has contended that Rule 302(k) is not self-executing and that designation of a particular body of water as a secondary contact water can only be achieved in a regulatory proceeding pursuant to sections 27 and 28 of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1027, 1028). While this interpretation would normally be accorded great weight, the Board's apparently inconsistent construction of Rule 302(k) since its promulgation prevents us from treating the Board's interpretation of its own rule with the usual deference.

Although the Board contends that it has consistently administered Rule 302(k) so as to require a regulatory proceeding before a specific body of water can be reclassified as a secondary contact water, petitioner cites instances in which the Board apparently made substantive evaluations of requests for Rule 302(k) classifications in nonregulatory proceedings. In one case the Board admits to having treated Rule 302(k) as a self-executing procedure not requiring a regulatory proceeding for

reclassification of waters as secondary contact waters. (*Modine Manufacturing Co. v. Environmental Protection Agency*, 13 Ill. P. C. B. Op. 15, 14 Ill. P. C. B. Op. 169, *aff'd sub nom. Modine Manufacturing Co. v. Pollution Control Board*, 40 Ill. App. 3d 498, 351 N.E.2d 875.) In *Modine* the Board granted a request for reclassification under Rule 302(k) in a variance proceeding. The Board later reversed its decision, however, and on rehearing denied the request. This denial was supported by a thorough evaluation of the evidence in the case which resulted in a finding that the tributary under consideration could not be classified as a secondary contact water under Rule 302(k) because a diversified aquatic biota was found to be present. A similar finding was made by the Board in *LaClede Steel Co. v. Environmental Protection Agency*, 14 Ill. P.C.B.Op. 463. LaClede had petitioned for a variance and during the variance proceeding made an additional request that a certain stream be designated secondary contact water under Rule 302(k). The Board denied the request, concluding that "[i]nsufficient evidence was presented which could convince the Board to apply Rule 302(k)." 14 Ill. P. C. B. Op 463, 474.

In each of these cases involving variance proceedings, the Board evaluated the evidence presented by the parties requesting a Rule 302(k) classification and determined on the merits of each that a reclassification would be inappropriate. Yet in the case now before this court the Board dismissed Olin's petition requesting among other things a 302(k) designation on the grounds that Olin had failed to conform to the required procedures for a regulatory proceeding. Olin now claims that this dismissal was an abrupt change in the Board's procedural policy and that the Board has acted arbitrarily in that it has adopted a procedural stance on Rule 302(k) determinations which effectively denies Olin's right to present evidence in support of its claim. The Board contends that it has consistently interpreted Rule 302(k) to require a regulatory proceeding in that it has never classified a body of water as a secondary contact water pursuant to Rule 302(k) in a nonregulatory proceeding.

■■■ The Board's decision on the merits of petitioners' request for Rule 302(k) classifications in the *Modine* and *LaClede Steel* cases is some evidence of a prior Board interpretation of Rule 302(k) contrary to that asserted by the Board in the present case. The Board's argument that a 302(k) determination is exclusively a regulatory matter not to be considered in an adjudicatory proceeding such as a variance hearing is plainly inconsistent with the manner in which it treated requests for Rule 302(k) classifications in *Modine* and *LaClede Steel*. In determining the practical construction given by an administrative agency to a regulation or a statute, informal administrative practices as well as formal pronouncements are relevant. Actions, not words, establish an administrative construction. (See *City of Spokane v. State* (1939), 198

Wash. 682, 89 P.2d 826.) An agency may be bound by its own established custom and practice as well as by its official pronouncements and regulations. (See *Briscoe v. Kusper* (7th Cir. 1970), 435 F.2d 1046.) We are thus faced with an administrative construction of the regulation which has not been uniform or consistent and which apparently changed shortly before the proceedings in this case. Although we are free to give effect to the Board's current construction of Rule 302(k) (*Karlson v. Murphy*, 387 Ill. 436, 56 N.E.2d 839), the Board's apparent modification of its interpretation of the rule compels a close examination of the purpose of Rule 302(k), the reasons asserted for the Board's present construction of the rule, the relationship between the rule and the objectives of the Environmental Protection Act, and the unfairness and inconvenience to Olin likely to result from an adoption of the Board's present construction.

■■ A cardinal rule of construction with respect to administrative rules and regulations is that rules promulgated under authority of a statute should be construed together with the statute to insure a sound and effective legislative program. (2 Am. Jur. 2d *Administrative Law* §307 (1962).) Rule 302 was originally intended as a special exemption from the Board's strict water quality standards for certain specifically identified waters incapable of supporting a diversified aquatic life due to an already degraded condition. As explained by the Board when it first adopted Rule 302, these specifically designated waters "would be given less restrictive requirements for four criteria associated with maintaining high levels of aquatic life. The designated waters do not physically provide acceptable habitat for a well-rounded fish population. All other waters in the State are tentatively designated for aquatic life." (Pollution Control Board Newsletter No. 22, at 9 (May 19, 1971).) By providing an exemption from its own water quality standards for a few specifically identified bodies of water it is clear that the Board was responding to a relatively unique and geographically isolated problem and did not intend that Regulation 302(k) would provide a broad category of relief from its water quality standards analogous to the variance procedure. Waters other than those identified in Rule 302 were tentatively designated as suitable for aquatic life and it is apparent that 302(k) was enacted in anticipation of the possible future discovery of other waters which might meet the strict requirements of Rule 302. Waters asserted to be in conformance with 302(k) can best be examined by the Board and classified as secondary contact waters in the same manner as those identified in 302. Rule 302(k) is thus part of a regulatory scheme which contemplates the classification of secondary contact waters solely by regulation in order to maintain the integrity of the Board's water quality standards.

The Board's contention that Rule 302 should be interpreted very

narrowly to accommodate only relatively narrow geographically isolated problems finds support in the Environmental Protection Act's comprehensive rule-making procedure. Section 27 of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1027(a)) requires that Pollution Control Board regulations be based upon a broad consideration of technical, environmental and economic factors. Section 28 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1028) requires that such consideration be explored in public hearings preceded by adequate notice to the public and concerned parties. Interested persons are to be given a reasonable opportunity to be heard on proposed rule changes and copies of the proposed change are to be made available to the public. Regulatory proceedings are thus preserved for those matters which have a potential environmental and economic impact beyond the mere imposition of some individual hardship. The Board is given broad discretion under the Act to implement a "unified, state-wide program to restore, protect and enhance the quality of the environment." (Ill. Rev. Stat. 1975, ch. 111½, par. 1002(b).) The rule-making procedures of the Act incorporate policy oriented guidelines and provisions for public monitoring of rule-making to insure that the Board's rule-making authority is exercised in conformance with the objectives of the Act and the interests of the people of Illinois.

The variance provisions of the Act present a striking contrast. (Ill. Rev. Stat. 1975, ch. 111½, par. 1035.) Under the variance procedure the Board determines whether the Act and Board rules are arbitrary and unreasonable as applied to an individual petitioner. The variance procedure narrowly focuses on the hardship of an individual polluter and provides only temporary relief from regulatory or statutory provisions in order to relieve the hardship and at the same time encourage future compliance with minimum environmental quality standards. The variance proceeding is adjudicatory in nature and wholly inadequate for a consideration of the potentially serious environmental and economic consequences attending a decision to classify a body of water as secondary contact water pursuant to Rule 302(k). Rule 302(k) allows for a permanent exemption from water quality standards for entire bodies of water, a designation with a potential far beyond the inconvenience or hardship of an individual polluter. If we were to accept Olin's contention that Rule 302(k) should be interpreted as self-executing to allow for the designation of waters as secondary contact waters in nonregulatory proceedings, we would in effect be construing 302(k) to provide for permanent variances from the Board's minimum water quality standards. The supreme court, however, has recently determined that the variance provisions of the Environmental Protection Act do not allow the Board to grant permanent variances. (*Monsanto Co. v. Pollution Control Board*, 67 Ill. 2d 276, 367 N.E.2d 684.) The court concluded that the purpose of the

Act's variance procedure was to enable the Board to "provide relief from the hardship of immediate compliance and yet retain control over a polluter's future conduct by granting a temporary variance." (*Monsanto Co. v. Pollution Control Board,* 67 Ill. 2d 276, 288, 367 N.E.2d 684, 689.) This conclusion was based on a recognition that "the concept of a variance which permanently liberates a polluter from the dictates of a board regulation is wholly inconsistent with the purposes of the Environmental Protection Act." *Monsanto Co. v. Pollution Control Board,* 67 Ill. 2d 276, 286, 367 N.E.2d 684, 688.

The present dispute over the proper construction to be given Rule 302(k) raises a similar question. The suggestion that a 302(k) exemption from the Board's strict water quality standards can be granted in a variance proceeding is directly contrary to the Act's objectives. The regulatory process provides the only proper protection of the private and public interests which might be adversely affected by reclassification of a body of water under Rule 302(k). The Board's construction of 302(k) as requiring a regulatory proceeding, therefore, is consistent with both the Board's purpose in promulgating the Rule and the Act's broad mandate to restore, protect and enhance the quality of the environment.

Petitioner contends that it was manifestly unjust for the Board to announce an abrupt procedural change and refuse to consider its evidence in support of reclassification. While we must agree to some extent with this contention, we do not find the inconvenience and hardship caused petitioner by the Board's action to be sufficiently compelling to preclude us from construing Rule 302(k) in a manner consistent with the Board's purpose and the Act's broad objectives. Petitioner claims that the Board's action denies it the right to present evidence in support of its position. Petitioner may still, however, apply for a classification under Rule 302(k) by following the appropriate procedures for a regulatory proceeding. Moreover, petitioner will not suffer any extreme hardship as a result of a judicial construction of Rule 302(k) contrary to its position since it has been granted a variance from the copper discharge standard until December 19, 1980. Since the Pollution Control Board will have no choice but to follow our construction of Rule 302(k) (*Scheffki v. Board of Fire & Police Commissioners,* 23 Ill. App. 3d 971, 320 N.E.2d 371), we are unwilling to ratify a construction so inconsistent with the Board's purpose and the Environmental Protection Act's objectives as that suggested by petitioner. The decision of the Pollution Control Board denying Olin's petition for review of classification, is therefore affirmed.

Affirmed.

JONES and KARNS, JJ., concur.