176 N.J. Super. 584 (1980)
424 A.2d 451
ELAINE L. SULAT, APPELLANT,
v.
BOARD OF REVIEW AND WALL TOWNSHIP BOARD OF EDUCATION, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1980.
Decided December 31, 1980.
*585 Before Judges BOTTER, KING and McELROY.
William S. Greenberg argued the cause for appellant (Greenberg & Mellk, attorneys; Arnold M. Mellk, of counsel; John B. Prior, Jr., on the brief).
Donald M. Palombi argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; Michael S. Bokar, Deputy Attorney General, of counsel; Donna J. Kelly, Deputy Attorney General, on the brief).
The opinion of the court was delivered by KING, J.A.D.
*586 The issue here is whether a full-time school teacher is entitled to unemployment compensation when her contract for the next year has not been renewed but her employer, the Board of Education, has placed her on a substitute list. N.J.S.A. 43:21-4(g)(1) controls.
That subsection of the Unemployment Compensation Law in pertinent part states:
With respect to service performed after December 31, 1977, in an instructional, research or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years, ..., to any individual if such individual performs such services in the first of such academic years (or terms) and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.[1]
Appellant Elaine Sulat was employed as a full-time teacher under a one-year contract for $11,668 with the Wall Township Board of Education (Board) during the school year September 1, 1978 through June 30, 1979. She had worked as a substitute for the preceding seven school years. By letter dated March 27, 1979 the Superintendent advised her that she would not be rehired for the following year. The claimant, without her consent, was placed on the substitute list for the 1979-1980 academic year by the Board.
*587 On July 3 appellant filed a claim for unemployment benefits. After receiving two weeks benefits, she was notified of ineligibility because of N.J.S.A. 43:21-4(g), supra. The notice of determination declining appellant's claim for benefits said:
You could have remained on the substitute list for the coming fall after your regular contract was over. You chose voluntarily to have your name removed. You are therefore ineligible between school terms.
At the hearing on September 19, 1979 before the Appeals Tribunal appellant testified that "I didn't want to substitute after working full-time for a year, I wanted to find a full-time position, whether in teaching or not." She didn't want to substitute teach "because it's not enough money and it's not steady." She had been paid $23 per day as a substitute during the 1977-1978 school year. Appellant testified that she was actively seeking work as a teacher and in other fields, i.e., "personnel, public relations, or anything  anything that would be comparable to the money I was making last year."
The Appeals Examiner reached the conclusion that since claimant's name had been placed on the substitute list for the fall term of 1979 by the School Board, even though she did not desire to substitute, "she had reasonable assurance of recall as that term is defined by the statute." The Board of Review of the Division of Employment Security affirmed the Appeals Tribunal. We conclude that it erred as a matter of law and reverse.
We disagree with the Attorney General's contention that Patrick v. Board of Review, 171 N.J. Super. 424 (App.Div. 1979), is controlling. There unemployment benefits were denied to a claimant who previously had been a substitute teacher, on either a long-term or day-to-day basis, during the 1977-1978 school year because she had received "reasonable assurance" that she would continue to be a day-to-day substitute during the 1978-1979 school year. Patrick is distinguishable simply because the claimant there never was a full-time teacher under annual contract, as was claimant in the present case. See also Ykovchick v. Minneapolis Public Schools, 312 Minn. 139, 251 N.W.2d 626 *588 (Sup.Ct. 1977). The Patrick claimant therefore had a reasonable expectation of similar employment as a substitute after the summer recess and was properly declared statutorily ineligible. See Schoenfeld v. Bd. of Rev., 163 N.J. Super. 584, 587 (App.Div. 1978), certif. den. 79 N.J. 492 (1979); See also Calamusa v. Bd. of Rev., 164 N.J. Super. 325 (App.Div. 1978).
Subsection (g)(1) of N.J.S.A. 43:21-4 was designed to prevent an obvious potential for abuse where a teacher, or other educational professional, recurrently worked under an actual contract or a reasonable expectation of reemployment for the nine-month academic term but did not work during the summer recess. As the court remarked in Milkowski v. Illinois Dept. of Labor, etc., 82 Ill. App.3d 220, 37 Ill.Dec. 644, 650, 402 N.E.2d 646, 650 (Ct.App. 1980), "school employees know that they generally will not be working during prescheduled vacations and during the summer recess and we do not believe that Congress ever intended to subsidize summer vacations." N.J.S.A. 43:21-4(g)(1) is our State's analogue to a similar subsection, 26 U.S.C.A. § 3304 n. 210, of Title II of the Emergency Jobs and Unemployment Assistance Act of 1974 which created a Special Unemployment Assistance (SUA) Program to counter the severe unemployment problem then extant in the nation. Benefits were financed 100% from federal funds. Id. 37 Ill.Dec. at 645, 402 N.E.2d at 647-648.
However, we cannot agree with the respondent's thesis which in essence holds that unemployment benefits should never be paid to full-time teachers whose contracts are not renewed and who are placed on a substitute list when terminated. The federal-state statutory scheme was not designed to totally exclude educational professionals from benefits. We conclude that a full-time teacher whose contract is not renewed for the subsequent academic year is most truly a victim of the unemployment crunch. We agree with the Federal District Court for the Northern District of Illinois which stated:
Thus a hypothetical teacher placed on economic layoff for the remaining school year who is without a contract for the subsequent academic year is truly *589 unemployed. That teacher faces the risks of retraining or relocation inherent in the restricted job market. The extended benefits of SUA may well be necessary in this emergency situation to sustain the teacher until further employment can be found. [Chicago Teacher's Union, Local No. 1, AFT/AFL/CIO v. Johnson, 421 F. Supp. 1261, 1265 (N.D. Ill. 1976)].
Claimant here lost full-time employment; she should not be denied unemployment benefits because the school board relegated her to the uncertain status of a day-to-day substitute against her will, despite her clearly expressed desire to find full-time employment in education or, if necessary, elsewhere in the economy. This case is in vivid contrast to the many cases standing for the proposition that a substitute teacher has a disqualifying "reasonable assurance" of employment if substitute teaching will be available in the succeeding year. See Patrick v. Bd. of Review, supra; Miller v. Ross, 78 A.D.2d 561, 431 N.Y.S.2d 725 (App.Div. 1980); Milkowski v. Illinois Dept. of Labor, etc., supra; Pac. v. Comm., Unemployment Comp. Bd., 48 Pa.Cmwlth. 91, 409 A.2d 470 (1979); Goralski v. Comm., Unemploy. Comp. Bd. of Rev., 48 Pa.Cmwlth 39, 408 A.2d 1178 (1979); see also Louderback v. Comm., Unemploy. Comp. Bd. of Rev. 48 Pa.Cmwlth. 501, 409 A.2d 1198 (1979).
In this context, we construe the disqualifying language in N.J.S.A. 43:21-4(g)(1) and its federal equivalent, 26 U.S.C.A. § 3304(a)(6)(A)(i), which states that "if there is a contract or reasonable assurance that such individual will perform services in any such [instructional] capacity for any educational institution in the second of such academic years or terms" [emphasis supplied], to mean that full-time teachers under annual contract are not disqualified because, after lay-off, they are offered substitute teaching work. We conclude that "services in any such capacity", in the circumstances, contemplates continuation of full-time services under an annual contract, not an offer of eligibility for day-to-day substitute services. We find this result fully consistent with the policy of our Unemployment Compensation Law and the federal act to ameliorate the impact of involuntary unemployment upon employees and the general *590 public as well. Sweeney v. Bd. of Rev., 43 N.J. 535, 539 (1965); Stonco v. Bd. of Rev., 106 N.J. Super. 6, 9 (App.Div. 1969).
The judgment of the Board of Review is reversed; claimant, to the extent otherwise qualified, is eligible for benefits under the Unemployment Compensation Law.
Reversed and remanded for further proceedings consistent herewith.
NOTES
[1] The subsection was contained in the amendments adopted by L. 1977, c. 307, § 2. This subsection was adopted to achieve compliance with the Federal Unemployment Tax Act. See 26 U.S.C.A. § 3304(a)(6)(A)(i). The original 1974 federal statute denied benefits only if the claimant had a "contract." The 1976 federal amendment added the language "or reasonable assurance that such individual will perform services in any such capacity." See Schoenfeld v. Bd. of Review, 163 N.J. Super. 584, 585-586 (App.Div. 1978), certif. den. 79 N.J. 492 (1979). The legislative history for the change was expressed at U.S. Code Congressional and Administrative News, pp. 5997, 6036 (1976) thusly: "For purposes of this provision, the term `reasonable assurance' means a written, verbal, or implied agreement that the employee will perform services in the same capacity during the ensuing academic year or term. The contract is intended to include tenure status."