200 N.J. Super. 74 (1985)
490 A.2d 352
HARRIET CHARATAN, ET AL., APPELLANTS,
v.
BOARD OF REVIEW, ETC. AND WOODBRIDGE BOARD OF EDUCATION, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1985.
Decided March 27, 1985.
*75 Before Judges MATTHEWS, FURMAN and HAVEY.
George Canellis argued the cause for appellants (Dwyer, Canellis & Bell, attorneys; Christopher M. Howard, on the brief).
Carl J. Palmisano argued the cause for respondent, Woodbridge Board of Education (Palmisano & Goodman, attorneys; *76 Carl J. Palmisano, of counsel; Scott J. Moynihan, on the brief).
Irwin I. Kimmelman, Attorney General, attorney for respondent, Board of Review, Department of Labor submitted a Statement in Lieu of Brief (Michael S. Bokar, Deputy Attorney General, of counsel; Todd A. Wigder, Deputy Attorney General, on the statement).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Claimants, part-time supplemental instructors for the Woodbridge Board of Education during the 1982-83 academic year who had a one-year oral guarantee of employment, appeal from a final determination of the Board of Review which held them ineligible for unemployment benefits from June 20, 1983 through the end of the period between academic years. Claimants contend that the Board's finding that they had a reasonable assurance of employment in an instructional capacity during the 1983-84 academic year because the Woodbridge Board of Education had offered to place their names on a substitute teacher's roster was based on insufficient credible evidence in the record.
Claimants were employed by the Woodbridge Township Board of Education as supplemental teachers during the 1982-83 academic year. Each began in September 1982 and continued on an uninterrupted basis until June 1983. Although claimants did not have written contracts, they were appointed to their positions in August 1982 by means of a telephone call and they received a guarantee from the Board at that time that they would continue in the positions for the entire academic year.
As supplemental instructors, claimants taught children with learning disabilities in groups of three children or less for a maximum of 20 hours per week. Some of them taught five days per week for four hours a day whereas others taught four *77 days per week for five hours a day. Claimants earned $11.50 an hour and were eligible to acquire tenure as teaching staff members. In fact, the majority of claimants were tenured employees of the Woodbridge Board of Education.
To be appointed as a supplemental instructor, a claimant was required to have a bachelor's degree and be state certified. Claimants were reimbursed for traveling expenses if required to go from one school to another and also received paid sick days. In addition, claimants were covered by the collective bargaining agreement between the Board and the Woodbridge Federation of Teachers. Claimants were not replaced by substitute teachers when absent from work.
By letter dated April 27, 1983, claimants were notified by the secretary of the Woodbridge Township Board of Education that the Board had decided not to rehire them as supplementary teachers for the 1983-84 school year. Subsequently, by certified letter dated June 24, 1983, the Board's deputy director of special services offered claimants the opportunity of having their names placed on the district's 1983-84 roster of substitute teachers.
According to the Board's Deputy Director of Special Services, the Woodbridge Township School District always had a need for substitute teachers. The Board was forced to advertise for substitute teachers and telephoned colleges soliciting the names of recent graduates who might be interested in substitute teaching. In fact, there were times when not enough substitutes were available and the Board was required to use "regular" teachers to cover classes.
Substitute teachers are not required to be state certified nor is it necessary for them to be college graduates. Sixty college credits suffice. Substitute teachers are primarily hired on a per diem, on-call basis. There are times, however, when substitutes are hired for long-term assignments. Substitutes earn $36 per day. After working for a period of 15 consecutive days, the salary is increased to $40 per day retroactive to the *78 first day of the assignment. Substitutes are not entitled to sick leave benefits or reimbursement for traveling expenses.
Based on the foregoing evidence, the Appeal Tribunal found claimants ineligible for unemployment benefits from June 20, 1983 through the end of the period between academic years, pursuant to N.J.S.A. 43:21-4(g)(1). The Appeal Tribunal reasoned that claimants, as supplemental instructors, were not full-time teachers under annual contract. Thus, the Board's offer to place claimants' names on the roster of substitute teachers, where the evidence strongly supported the expectation that claimants would be called to serve in a substitute teaching capacity, constituted a reasonable assurance that they would perform services in an instructional capacity for an educational institution during the 1983-84 school year, thereby rendering them ineligible for unemployment benefits.
The Board of Review affirmed the Appeal Tribunal's determination on the basis of the record below.
Claimants contend that there is insufficient credible evidence in the record to support the finding of the Appeal Tribunal, subsequently affirmed by the Board of Review, that they were provided with a "reasonable assurance" of employment pursuant to N.J.S.A. 43:21-4(g)(1). That statute provides in pertinent part:
With respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week of unemployment commencing during the period between 2 successive academic years, or during a similar period between two regular terms, whether or not successive, ... to any individual if such individual performs such services in the first of such academic years (or terms) and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms; ....
The burden is upon a claimant to establish the right to unemployment compensation benefits. Bastas v. Bd. of Review Dep't of Labor and Ind., 155 N.J. Super. 312, 315 (App.Div. 1978). Thus, claimants must demonstrate that they did not *79 have a reasonable assurance of employment for the 1983-1984 school year in an instructional capacity.
In reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs. Zielenski v. Bd. of Rev., Div. of Emp. Sec., 85 N.J. Super. 46, 54 (App.Div. 1964); Morgan v. Bd. of Review, Div. of Employ. Sec., 77 N.J. Super. 209, 213 (App.Div. 1962). Where there is substantial credible evidence in the record as a whole to support the ruling, the decision of the Board must be upheld. In re application of Howard Savings Bk., 143 N.J. Super. 1, 10-11 (App.Div. 1976).
N.J.S.A. 43:21-4(g)(1), which provides an exception to eligibility for unemployment compensation benefits, is tailored to meet the unique ten month term of educational employment. There is a predictable hiatus in the period during which actual work is performed, due to the summer vacation, and as long as the employment relationship continues, no unemployment compensation is to be paid. Denial of benefits to these persons "conforms with the Legislature's intent not to subsidize the vacation periods of those who know well in advance that they may be laid off for certain specified periods." Davis v. Com., Unemployment Compensation Bd., 39 Pa.Cmwlth. 146, 394 A.2d 1320, 1321 (Cmwlth.Ct. 1978). Accord, Sulat v. Board of Review, 176 N.J. Super. 584, 588 (App.Div. 1980).
In Schoenfeld v. Board of Review, 163 N.J. Super. 584 (App. Div. 1978), certif. den. 79 N.J. 492 (1979), claimant, a Title I teacher's aide, was denied special unemployment assistance benefits during a summer recess under a federal statute (26 U.S.C.A. § 3304) substantially similar to N.J.S.A. 43:21-4(g)(1) which barred such benefits where the employee worked for an institution in the prior academic year and had "a contract to perform services" in the upcoming year. Although claimant normally worked under a written contract, she was notified in *80 the early spring that federal funds had been allocated for the position of teacher's aide, and there was an oral agreement that she would return in the fall, providing that nothing unforeseen happened. 163 N.J. Super. at 585-586. This court affirmed the denial of benefits, holding that the word "contract" in the statute could be interpreted to mean a reasonable expectation of employment for the next academic year. 163 N.J. Super. at 587-588.
N.J.S.A. 43:21-4(g)(1) has been the subject of two Appellate Division cases. In Patrick v. Board of Review, 171 N.J. Super. 424 (App.Div. 1979), claimant was employed as a day-to-day substitute, claimant was paid on a per diem basis but for her long term services, compensation was based on a scale according to her years of experience as a teacher. Although claimant was not scheduled to return to Absecon as a long-term substitute for the 1978-79 school year, the court held that she failed to demonstrate that she did not have a "reasonable assurance of employment," since she was approved both by Absecon and Ocean City to be a day-to-day substitute for the 1978-79 school year. Thus, the court affirmed the Board of Review's determination that claimant was not entitled to unemployment benefits during the summer months intervening between the school years. 171 N.J. Super. at 425-426.
In Sulat v. Board of Review, 176 N.J. Super. 584 (App.Div. 1980), claimant who had been employed as a full-time teacher under a one-year contract with the Wall Township Board of Education during the school year September 1, 1978 through June 30, 1979, filed a claim for unemployment benefits at the end of the school year, after being advised by letter that she would not be rehired for the following year. The claimant, without her consent, was placed on the substitute list for the 1979-80 academic year by the Board. Claimant had her name removed from the substitute list because she did not wish to substitute after working full-time for a year. Claimant actively sought work as a full-time teacher and she also sought full-time work in other fields. The Board of Review held claimant *81 ineligible for unemployment benefits on the ground that she had a reasonable assurance of recall since her name had been placed on the substitute list. 176 N.J. Super. at 586-587.
In reversing the Board's finding of ineligibility, we held that full-time teachers under annual contract are not disqualified for unemployment after lay-off because they are offered substitute teaching work. This court concluded that under the circumstances presented in Sulat, the term "services in any such capacity," as utilized in N.J.S.A. 43:21-4(g)(1), contemplates continuation of full-time services under an annual contract, not an offer of eligibility for day-to-day substitute services. 176 N.J. Super. at 589. We distinguished our holding in Patrick v. Board of Review by noting that the claimant in Patrick was never a full-time teacher under annual contract. Thus, the Patrick claimant had a reasonable expectation of similar employment as a substitute after the summer recess and was properly declared statutorily ineligible. 176 N.J. Super. at 587-588.
In finding the claimants in the case at bar ineligible for unemployment benefits, the Appeal Tribunal and Board of Review placed principal reliance on an unpublished Appellate Division opinion of Schoenfeld v. Board of Review, Docket No. A-3138-78 (App.Div. 1980).[1] The claimants in Schoenfeld were employed during the 1977-78 school year on a non-contractual basis as part-time supplemental instructors by the Woodbridge Township Board of Education. They were paid on an hourly basis and none worked over 20 hours per week. The Board decided not to rehire claimants as supplemental instructors for the 1978-79 academic year. The Board offered to place claimants' names on the Woodbridge substitute teacher roster. Claimants filed for unemployment benefits after the close of the 1978 school year. They were held ineligible for benefits by *82 the Board of Review on the basis of N.J.S.A. 43:21-4(g)(1) because the period for which benefits were claimed was between academic years and claimants had a reasonable assurance that they would perform instructional services during the following school year.
In affirming the Board of Review's determination, this court noted that the evidence strongly supported the expectation that claimants would be called to serve during the 1978-79 school year in a substitute teaching capacity. Past experience indicated that there were occasions when the Woodbridge school district was unable to fill all the available openings with substitutes and regular teachers were required to cover extra classes. Moreover, the school system had also found it necessary to place newspaper advertisements and contact colleges in an effort to obtain the needed additional substitutes. Thus, we were satisfied that there was sufficient credible evidence in the record to support the Board of Review's determination that claimants were ineligible for unemployment benefits because they had a "reasonable assurance" of employment during the 1978-79 school year.
The Schoenfeld decision has no precedential value since it is an unpublished opinion. Although the factual situation is closely related to the case at bar, there is at least one important difference. There is no mention in the Schoenfeld decision that the claimants received an oral guarantee at the beginning of the school year that they would remain employed as supplemental teachers for the entire academic year. The court simply referred to them as non-contractual employees. In this case, although claimants did not have a written contract, they did receive an oral guarantee from the Board of Education in August 1982 that they would continue in their positions as supplemental instructors for the entire 1982-83 academic year. We find that the presence of this oral guarantee constitutes a critical difference from the situation presented in Schoenfeld, and brings this case within the ambit of Sulat v. Board of *83 Review. Although the claimant in Sulat had been employed as a full-time teacher under a one-year contract, 176 N.J. Super. at 586, we do not believe that the mere fact that these claimants were part-time employees should be of critical significance since they did have a one-year oral guarantee. Claimants here lost regular part-time employment. They taught either five days per week for four hours a day or four days per week for five hours a day. They should not be denied unemployment benefits because the board relegated them to the uncertain status of day-to-day substitutes. This case is clearly distinguished from Patrick v. Board of Review, which stands for the proposition that a substitute teacher has a disqualifying "reasonable assurance" of employment if substitute teaching will be available in the succeeding year. In our judgment, the phrase "services in any such capacity" contained within N.J.S.A. 43:21-4(g)(1), in the circumstances of this case, contemplates continuation of regular part-time services under an annual oral guarantee, not an offer of eligibility for day-to-day substitute services.
While we distinguish Schoenfeld we question whether the same decision would have been reached had it been decided today, in view of the Supreme Court's holding in Spiewak v. Rutherford Bd. of Ed., 90 N.J. 63 (1982). In Spiewak, the Court held that public school teachers who provided remedial and supplemental instruction to educationally handicapped children could acquire tenure where they had met all of the statutory qualifications. Thus, the Court noted that pursuant to N.J.S.A. 18A:28-5 and 18A:1-1, an employee of a board of education is entitled to tenure if she works in a position for which a teaching certificate is required; she holds the appropriate certificate and she has served the requisite period of time. 90 N.J. at 66, 73-74. Since the teachers in Spiewak met the above requirements, the Court noted that they were presumptively eligible for tenure unless a statutory exception applied. 90 N.J. at 74. Although N.J.S.A. 18A:16-1.1 denies tenure to temporary employees who act in place of another employee who is absent or disabled, the Court held that statute to be inapplicable *84 because none of the teachers was a temporary replacement. 90 N.J. at 74.
The majority of claimants in this case were tenured employees of the Board of Education. Had claimants accepted the offer to have their names placed on the roster of substitute teachers, they would not have been eligible for tenure since N.J.S.A. 18A:16-1.1 denies tenure to temporary employees who act in place of another employee who is absent or disabled. Claimants should not be denied unemployment benefits when the school board deprived them of their regular part-time tenured positions and relegated them to the uncertain status of non-tenured day-to-day substitutes.
We conclude that there is insufficient credible evidence in the record to support the Board of Review's finding that claimants had a reasonable assurance of performing services "in any such capacity" for an educational institution in the 1983-84 academic year. The Board's determination of ineligibility is reversed and the cause remanded to the Board for purposes of calculating the amount of benefits to which claimants are entitled.
NOTES
[1] The Appeal Tribunal mistakenly cited this case in its opinion as Schoenfeld v. Board of Review, 163 N.J. Super. 584 (App.Div. 1978), certif. den. 79 N.J. 492 (1979). The cited case, however, relates to an entirely different claimant.