PIELET BROTHERS' TRADING, INC., Petitioner-Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Respondents-Appellees.

Fifth District    No. 5—89—0546

Opinion filed June 26, 1991.

Jerold S. Solovy, Glenn K. Seidenfeld, Laura A. Kaster, Raymond T. Reott, and Rebecca L. Raftery, all of Jenner & Block, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Christine Zeman, Assistant Attorney General, of counsel), for respondent.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Pursuant to Supreme Court Rule 335 (134 Ill. 2d R. 335), petitioner, Pielet Brothers' Trading, Inc., appeals from an order of the Illinois Pollution Control Board (the Board) finding that petitioner's subsidiary, St. Louis Auto Shredding (SLAS), was operating without a permit, that the SLAS site was not subject to the permit exemption allowed for waste or refuse generated by an operator's own activities, and that petitioner was in violation of seven sections of the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1021 *et seq.*). In this appeal, petitioner does not contest the propriety of the Board's findings regarding all the violations. Instead, petitioner raises the following issues: (1) whether a permit issued by operation of law for the SLAS site, and (2) whether the Board erred in finding that petitioner had violated the prohibition against open burning. We reverse in part and affirm in part.

Petitioner is in the business of shredding scrap automobiles and appliances through its subsidiary, SLAS, which operates in National City. After shredding, approximately 80% of the material can be recovered and sold to steel mills and foundries as scrap metal. The remaining 20% is referred to as "shredder residue" or, more commonly, "fluff." Fluff consists of dirt, stone, glass, plastic, and rubber. Petitioner discards its fluff on its own premises, and it is the discarded fluff that is the source of controversy.

Petitioner received its first development permit for its waste disposal at the SLAS site from the Illinois Environmental Protection

Agency (the Agency), another respondent herein, in 1976, and its first operating permit in 1979. The 1979 permit was for a trench method of disposal covering trench number 3. According to Douglas Andrews, consulting engineer for petitioner, petitioner filed another application for development of an additional trench in January 1982. This application was withdrawn in June or July of 1982, after representatives of petitioner met with the Agency and the Agency recommended changing the waste disposal system at the SLAS site from a trench method to an area fill method. Andrews' engineering firm investigated the subsoil conditions at the SLAS site to determine suitability for an area fill. Andrews submitted the results of this investigation to the Agency in January 1983. Andrews concluded that an area fill operation was suitable for the SLAS site. In March 1983, another meeting was held concerning waste disposal at the SLAS site. Dr. Lincoln Hawkins, a researcher in the field of plastics recovery, was in attendance. According to Andrews, the concept of 30-day cover as opposed to daily cover of the refuse was discussed. It was Hawkins' opinion that daily cover would result in too much earth material being mixed with plastic material and would make the recovery of plastic impractical.

On April 13, 1983, petitioner submitted an application for both a developmental and an operational permit which contained provisions for both an area fill and for 30-day cover. On July 7, 1983, Andrews wrote a letter to Lawrence Eastep, manager of the Agency's permit section, waiving the 90-day limit for review of the application so that petitioner could submit more information regarding the installation and testing of groundwater monitoring wells. Andrews estimated in the letter that it would be 45 days until the monitoring wells could be installed, tested, and reported. On August 17, 1983, Andrews sent another letter to Eastep in which he submitted additional information to the Agency. After listing the additional information, Andrews stated that he believed the Agency had all the information it now needed in order to issue petitioner a supplemental permit. He asked Eastep to contact him if the Agency needed further information or to set up an additional meeting if Eastep believed that that would be necessary. According to Andrews, he never heard from the Agency again regarding the status of the permit. At some point, someone at the Agency told Andrews that the application had been lost. Andrews was told that the person who had signed the application had left the Agency's employ and that the application had been overlooked. Andrews could not remember the name of the person who gave him that information.

On April 12, 1988, Randy Ballard, an employee of the Agency, inspected the SLAS site. On the basis of Ballard's inspection, the Agency determined that petitioner had operated the site in violation of nine provisions of the Act, including accepting waste without necessary permits in violation of section 21(p)(7) of the Act (Ill. Rev. Stat., 1986 Supp., ch. 111½, par. 1021(p)(7)). The Board then reviewed the Agency's finding and issued an order. It is from this order that petitioner appeals.

The first issue we are asked to consider is whether a permit issued for the SLAS site by operation of law. Petitioner argues that the facts presented show that a permit issued by default pursuant to section 807.205(g) of the Illinois Administrative Code (35 Ill. Adm. Code §807.205(g) (1985)). According to petitioner, the regulatory language of section 807.205(g) clearly states that if the Agency is tardy or delays its decision for more than 90 days, the permit is granted. Petitioner contends that since the Agency took no action on petitioner's application for over five years, until Randy Ballard inspected the SLAS site on April 12, 1988, a permit issued by operation of law. The Board and the Agency respond that petitioner waived the time limits imposed upon the Agency for permit review, and because of petitioner's continuing treatment of the application as pending, no permit issued by operation of law.

■ Section 807.205(g) provides that if the Agency fails to take final action on an application for a development permit within 90 days from the time it is filed or within 45 days from the filing of an operating permit, "the applicant may deem the permit granted on the 91st day or the 46th day after the application was filed." (35 Ill. Adm. Code §807.205(g) (1985).) The language of the regulation is clear: if the Agency delays its decision on an application for more than the specified period, the permit issues by operation of law. From our review of the facts it is also clear that the Agency took no action whatsoever until it inspected the SLAS site in April 1988, approximately five years after petitioner filed its application. While we agree with the Board and the Agency that petitioner did waive the deadline for Agency final action by Andrews' letter of July 7, 1983, we cannot agree that this letter exculpates the Agency from its failure to act on petitioner's application. As indicated below, Andrews' letter of July 7, 1983, specifically states that petitioner is waiving the 90-day limit for review, but it also states that petitioner fully intends to supply further information to the Agency so that the review can be completed:

"Therefore, on behalf of St. Louis Auto Shredding, Inc., we hereby waive the 90-day limit for review of the application and

request that you delay final action until the monitoring wells are installed, tested and reported to the Agency. We estimate that this can be accomplished within 45 days."

As promised, petitioner sent the additional information to the Agency within 45 days, as reflected by Andrews' letter of August 17, 1983, which was accompanied by the reports. The letter states:

"We trust this additional data provides the Agency with a sufficient basis for issuance of the Supplemental Permit. However, I recall that the Agency has mentioned the possibility of other assurances. I would like to suggest another meeting with you, and the Division of Land Pollution Control staff, Mr. Haschemeyer, Mr. Pielet, Mr. Valukas and myself. After review of this submittal, if you feel such a meeting could be productive, please advise us."

From this letter, it is apparent that petitioner has effectively withdrawn its waiver. The Agency's failure to request additional information or to set up a meeting as the above letter suggests would seemingly indicate that the Agency was satisfied with the application and would rule on it accordingly. Under these circumstances, the most appropriate action would have been for the Agency to review the application and to approve or deny a permit within the following 90 days. Failure to approve or deny this application for five years is without a doubt unreasonable, and we find the permit issued by operation of law.

■ Respondents also argue that because petitioner treated the application as pending, no permit issued by operation of law. It is clear from a review of the Board's order that the Board did interpret section 807.205(g) to require that petitioner prove its subjective intent to "deem the permit granted" in order to establish that the permit issued by operation of law. While substantial weight should be given to the Agency's construction and application of its own rules, courts can refuse the Agency's interpretation if it is clearly erroneous or inconsistent with settled rules of construction. (*Olin Corp. v. Pollution Control Board* (1977), 54 Ill. App. 3d 480, 483, 370 N.E.2d 3, 5-6.) In *Environmental Protection Agency v. Pollution Control Board* (1976), 37 Ill. App. 3d 519, 346 N.E.2d 427, this court succinctly stated:

"A development permit is deemed granted only if the Agency fails to act upon an application for such a permit within 90 days of its submission to the Agency, while an operating permit is deemed granted if the application is not acted upon within 45 days." (37 Ill. App. 3d at 521, 346 N.E.2d at 428.)

We did not require the applicant's subjective intent. In fact, we can find no previous interpretation of section 807.205(g) which requires the applicant to subjectively regard the permit as granted in order for a permit to issue by operation of law. Therefore, we interpret section 807.205(g) not to require the applicant to subjectively believe that a permit has been issued. Instead, we interpret this section to mean that if the Agency is tardy or delays its decision beyond the time specified, the permit may issue by operation of law. This decision, that petitioner's permit issued by operation of law under the circumstances of this case, affects only the charge of operating in an unpermitted portion of a landfill in violation of sections 21(p) and (n) of the Act (Ill. Rev. Stat. 1987, ch. 111½, pars. 1021(p), (n)). The other charges against petitioner and the Board's rulings thereon stand.

The final issue we are asked to address is whether the Board erred in finding that respondent had violated the prohibition against open burning found in section 21(p)(4) of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1021(p)(4)). Petitioner contends that the evidence showed that the open burning was performed by trespassers who entered the SLAS site illegally. Citing *Wasteland, Inc. v. Pollution Control Board* (1983), 118 Ill. App. 3d 1041, 456 N.E.2d 964, and *People v. Joliet Ry. Equipment Co.* (1982), 108 Ill. App. 3d 197, 438 N.E.2d 1205, petitioner argues that if open burning is not being done intentionally for purposes of waste disposal, no violation of the Act occurs. However, we find that petitioner is responsible for the open burning that occurred on the SLAS site.

In *People v. Joliet Ry. Equipment Co.*, the defendant was in the business of salvaging railroad cars. During dismantling operations, the defendant cut sections of the tank, box, and flat cars while wood was part of the car. When the cutting torch was used on the metal, the wood located near the metal would occasionally smolder. If the torch was applied directly to the wood, burning would result. As a result, the Attorney General, on behalf of the State, sought injunctive relief and civil penalties for violation of the open burning law. The court in *Joliet Ry. Equipment Co.* held that the accidental or incidental burning of a railroad car under these circumstances would not constitute open burning, unless it could be proven that the car was deliberately set on fire to burn up all the wood before the steel was cut up during salvage operations. (108 Ill. App. 3d at 204, 438 N.E.2d at 1210.) In *Wasteland, Inc. v. Pollution Control Board*, large amounts of paper and cardboard were spread over a large area. Apparently, this waste caught on fire and the Board found this to be in violation of the open burning law. Citing *People v. Joliet Ry. Equipment Co.*,

the court in *Wasteland, Inc.* found that the Board erred in concluding that the defendant had violated the open burning prohibition because there was no evidence that the fires had been intentionally set for the purpose of disposing of refuse. *Wasteland,* 118 Ill. App. 3d at 1052, 456 N.E.2d at 974.

■ In the instant case, the fires had been intentionally set for the purpose of disposing of refuse. Agency inspector Randy Ballard observed the burning of the rubber insulated wire by trespassers. The SLAS site manager, Mr. Karkut, confirmed Ballard's suspicions that the scavengers were burning off rubber insulation on the wire in order to take the underlying wire. Petitioner was aware of the burning, as evidenced by Karkut's statements to Ballard, but took no action to stop the burning. While petitioner did not itself burn the rubber in order to dispose of it, it allowed such operations to occur on its premises. Therefore, we find that the Board did not err in finding that petitioner violated the prohibition against open burning. Ill. Rev. Stat. 1987, ch. 111½, par. 1021(p)(4).

For the foregoing reasons, the order of the Pollution Control Board is affirmed in part and reversed in part.

Affirmed in part, reversed in part.

RARICK, P.J., and CHAPMAN, J., concur.