Argued and submitted March 8, reversed and remanded with instructions June 5, reconsideration denied August 23, petition for review denied October 1, 1985
(300 Or 111)

# KELLY,
*Petitioner,*

*v.*

# EMPLOYMENT DIVISION et al,
*Respondents.*

(84-AB-1392; CA A33569)

701 P2d 448

George W. Kelly, Eugene, argued the cause and filed the brief for petitioner.

Jeffrey Bennett, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

No appearance for respondent University of Oregon.

Before Joseph, Chief Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Claimant appeals from a final order of the Employment Appeals Board which affirmed the referee's denial of unemployment benefits for a summer recess period between academic years. We reverse and remand.

Claimant was an instructor at the University of Oregon Law School during the 1982-83 and 1983-84 academic years. His 1983-84 position was full-time at a salary of $19,000 with full health, dental and retirement benefits. In April of the 1983-84 academic year he applied for a part-time teaching position for the following academic year. He later accepted a part-time position as an adjunct professor for the fall term at a salary of $3,000, without benefits. The question is whether claimant's part-time position disqualifies him under ORS 656.167(1) from receiving unemployment benefits during the summer. ORS 657.167(1) provides:

"Benefits based on service in an instructional, research or principal administrative capacity for a school * * * shall be payable to an individual in the same amount, on the same terms and subject to the same conditions as benefits payable on the basis of other service subject to this chapter, except that benefits shall not be paid based on such services for any week of unemployment commencing during the period between two successive academic years * * * if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in *any such capacity* for any educational institution in the second of such academic years or terms." (Emphasis supplied.)

In *Mallon v. Emp. Div.*, 41 Or App 479, 599 P2d 1164 (1979), we held that the statutory disqualification applied to an individual only if the individual is assured that he will perform in an instructional, research or principal administrative capacity "in the same or similar *quantity* respecting full time or part-time services as performed during the preceeding academic term." 41 Or App at 484. (Emphasis supplied.) The claimant in *Mallon* held two academic positions, one full-time and one part-time. He was assured of fall employment only for the part-time position. We recognized that ORS 657.167(1), read literally, excluded the claimant from receiving summer unemployment benefits for the loss of the full-time position. However, we rejected a literal reading of

the disqualification in the light of the legislative intent to provide unemployed persons in the academic community with the same benefits as other unemployed persons. We concluded:

> "It is doubtful that the legislature intended to disqualify a person employed full time in education institutions when that person is assured of returning to a sideline job in an educational institution." 41 Or App at 479.

In this case, the referee distinguished *Mallon* on the facts, because the claimant there had a full-time position at a separate educational institution and, so far as *that* institution was concerned, had no assurance of reemployment. In this case claimant does have an assurance of reemployment at the same institution, albeit at a much reduced level.

Respondents appear to concede that our construction of ORS 657.167(1) in *Mallon* does not support the referee's factual distinction. Although claimant had a contract to perform the same type of service in the next academic year, he would suffer an 81 percent reduction in the quantity of service between academic years. Respondents argue that our construction of the disqualification in *Mallon*, referring to the quantity of service as well as the type of service, was wrong, because we misinterpreted the testimony of a witness and misunderstood the legislative history in construing the statute. Respondents urge us either to limit the *Mallon* holding to its facts or to overrule it altogether.[1]

ORS 657.167(1) was amended in 1977 to comply with the Unemployment Compensation Amendments of 1976, Pub L 94-566, 90 Stat 2667, amending the Federal Unemployment Tax Act.[2] A state's failure to enact legislation implementing

---

[1] In *Johnson v. Emp. Div.*, 59 Or App 626, 651 P2d 1365 (1982), we indicated that we may have misunderstood the testimony of a federal Department of Labor witness who testified before the Oregon House Labor Committee. We were not required in *Johnson* to reevaluate our construction of ORS 657.167(1) in *Mallon*, because Johnson went from a part-time position in the first academic year to a part-time position in the second.

[2] 26 USC § 3304(a)(6)(A)(i) (1954), as amended by Unemployment Compensation Amendments of 1976, Pub. L. 94-566, 90 Stat. 2667, provides for approval by the Secretary of Labor of any state law that disqualifies individuals serving in an "instructional, research or principal administrative capacity" for compensation "during the period between two successive academic years * * * if such individual performs such services in the first of such academic years (or terms) and if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such adademic years or terms."

the federal amendment would render that state ineligible for tax offset credit and certain administrative grants. Therefore, other states have enacted disqualification statutes essentially identical to ORS 657.167(1). *See, e.g.,* Ill Rev Stat ch 48, § 442(B)(2) (1984); Ind Code § 22-4-14-7(a)(1) (Supp 1984); Minn Stat § 268.08(6)(c) (1984); NJ Stat Ann § 43:21-4(g)(1) (Supp 1984); 43 Pa Stat Ann, § 802.1(1) (Purdon's Supp 1983); Wisc Stat § 108.04(17)(a)(1983). The majority of jurisdictions that have addressed reductions in the level of employment under similar or identical disqualifications in their own unemployment benefit schemes have held that the reduction of a full-time academic position to an offer of part-time employment in the same institution does not disqualify the claimant from summer unemployment benefits. *See Whitley v. Board of Review,* 116 Ill App 3rd 476, 451 NE2d 1942 (1983); *Fort Wayne Community Schools v. Review Bd.,* ___ Ind App ___, 428 NE 2d 1379 (1981); *Johnson v. Independence School Dist. No. 535,* 291 NW2d 699 (Minn 1980); *Sulat v. Board of Review,* 176 NJ Super 584, 424 A2d 451 (1980); *Leissring v. DILHR,* 115 Wisc 2d 475, 340 NW2d 533 (1983); *but see Wilson v. Ross,* 80 App Div 2d 980, 438 NYS 2d 603 (1981).

We find the reasoning of the Wisconsin Supreme Court in *Leissring v. DILHR, supra,* persuasive. There the claimant had a full-time position teaching high school social studies and driver's education at a $19,000 annual salary. He was notified that his contract would not be renewed for the following academic year but was offered a one-eighth time position teaching driver's education at a salary of $2,166.25. The Wisconsin statute disqualified an individual from receiving unemployment benefits between academic years if the individual performed services in an "instructional, research, or principal administrative capacity" and if "there is a contract or a reasonable assurance that such employe will perform services in any such capacity" in the second academic year. *Leissring v. DILHR, supra,* 115 Wisc 2d at 482. After examining the legislative history of the federal and state unemployment compensation statutes, the Wisconsin Supreme Court stated:

"It is clear the Congress and the Wisconsin Legislature intended that public school teachers, like other state and

governmental employees, receive unemployment compensation benefits if eligible. It is also clear that sec. 108.04(17)(a), Stats., does not totally prohibit teachers from receiving unemployment compensation benefits during a summer period between academic years. The legislative history of sec. 108.04(17)(a), and the federal provisions on which it is based, indicate that the intent of the limited disqualification in sec. 108.04(17)(a) is to prevent subsidized summer vacations for those teachers who are employed during one academic year and who are reasonably assured of resuming their employment the following year. There is no indication that the legislature intended the disqualification * * * to apply to a teacher employed full-time who becomes unemployed at the end of the academic year, and whose only prospect of employment at that time is not a continuation of his or her previous contract, but merely an offer of * * * a position having substantially decreased wages and hours." 115 Wisc 2d at 488.

The court then held that the phrase "reasonable assurance that such employe will perform services in any such capacity" only applies to a teacher employed full-time who is laid off at the end of the academic year if (1) he has a reasonable assurance of performing services the following year in an instructional, research or principal administrative capacity *and* (2) if the terms and conditions of the employment for the following year are *reasonably similar to those of the teacher's employment in the preceding year.* 115 Wisc 2d at 489.

ORS 657.167(1) is based upon the same federal legislation as the Wisconsin statute construed in *Leissring.* The policy of both state statutes is the same, to provide unemployment benefits for individuals in an academic institution on the same terms as any other eligible worker, but to deny benefits for the customary summer period in an otherwise ongoing employment relationship. *See Redmond v. Employment Division,* 66 Or App 878, 882, 675 P2d 1126 (1984). To limit or overrule *Mallon* and to read ORS 657.167 to disqualify a teacher if he or she merely has some assurance of performing *any* instructional service, no matter how minimal the wages, hours and benefits might be in comparison to the preceeding year is not consistent with the legislative policy of treating academic employes in the same manner as other covered employes. Neither is such an interpretation consistent with the construction of similar legislation in the majority of

jurisdictions confronting the problem. We adhere to our construction of ORS 675.167(1) in *Mallon*. On the facts, claimant's reduction in the quantity of service from full-time to part-time entitled him to unemployment compensation for the summer months.

Reversed and remanded with instructions to award benefits.