ASH, APPELLANT, *v.* BOARD OF REVIEW, OHIO BUREAU OF EMPLOYMENT SERVICES, ET AL., APPELLEES.

[Cite as Ash *v.* Bd. of Review (1986), 26 Ohio St. 3d 158.]

(No. 85-1431—Decided August 25, 1986.)

*Cloppert, Portman, Sauter, Latanick & Foley* and *David G. Latanick; Pamela L. Margulies* and *Ohio Education Assn.,* for appellant.

*Means, Bichimer, Burkholder & Baker Co., L.P.A.,* and *Kimball H. Carey,* for appellee Logan-Hocking City School District Board of Education.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Patrick A. Devine,* for appellees Board of Review and Administrator.

HOLMES, J. The sole issue presented for review is whether the Ohio law existing at the time of appellant's application for unemployment compensation benefits entitled her to such benefits. For reasons which follow, we hold that it did and reverse the decision below.

R.C. 4141.29(I)(1)(a) provided, in pertinent part:

"Benefits based on service in an instructional * * * capacity * * * or for an educational institution * * * shall not be paid to any individual for any week of unemployment which begins during the period between two successive academic years or terms * * * if the individual performs such services in the first of such academic years or terms and has a contract or a reasonable assurance of performing services in any such capacity for any such institution in the second of such academic years or terms."

The term "reasonable assurance" was, at the time of appellant's application, defined as "a written, verbal, or implied agreement that the employee will perform services in the same or similar capacity during the ensuing academic year or term." Former R.C. 4141.29(I)(2) (138 Ohio Laws, Part II, 4386, 4420). Although the General Assembly has since amended this latter section, effective November 18, 1983, Ash's claim was made in June 1981 before this amendment went into effect and such amendment is irrelevant to this litigation. The law in force at the time the claim arose will determine the outcome since this statutory amendment did not clearly show an intention that it should operate retrospectively.[1] See *Smith* v. *Ohio Valley Ins. Co.* (1971), 27 Ohio St. 2d 268, 276 [56 O.O.2d 160]; *Cowen* v. *State, ex rel. Donovan* (1920), 101 Ohio St. 387, 395.

---

[1] The "new" version of R.C. 4141.29(I)(2) simply deletes any reference to a definition of "reasonable assurance" and provides:

"No disqualification will be imposed, between academic years or terms or during a vacation period or holiday recess under this division, unless the administrator or his deputy has received a statement in writing from the educational institution or institution of higher education that the claimant has a contract for, or a reasonable assurance of, reemployment for the ensuing academic year or term."

We now turn to look at the unemployment compensation law in force for the week ending June 13, 1981.

Previously, in interpreting the then-existing R.C. 4141.29(I)(1)(a) and (I)(2), the board of review held that a full-time teacher whose contract had not been renewed but who is offered a substitute teaching contract for the next academic year does not have reasonable assurance of employment in a same or similar capacity. *In re Claim of Gerken* (Dec. 17, 1979), Unemployment Compensation Board of Review, No. 513583-BR, unreported; *In re Claim of Poppenhouse* (Feb. 22, 1979), Unemployment Compensation Board of Review, No. 496884-BR, unreported. The *Gerken* decision reasoned, at 5, that: "It is clear that there are a number of significant differences between a substitute teacher and a fulltime teacher. The most obvious difference is that a position as a substitute teacher does not guarantee any amount of work. Work is completely contingent upon being called by the employing school board. In addition, there is a lower salary paid for employment as a substitute teacher." The administrator has a statutory duty to "follow decisions of the unemployment compensation board of review which have become final with respect to claimants similarly situated." R.C. 4141.28(F).

The administrator did, in fact, issue a directive to his deputy administrators in his Ohio Claims Handbook to the effect that:

"* * * A full-time professional or nonprofessional [school] employee who is not reemployed for his or her same or similar position on a full-time basis, but who is offered work as a substitute is considered unemployed due to lack of work and is not subject to the between-terms disqualification. * * * This ruling is based on the fact that claimant does not have reasonable assurance of employment in the same or similar position." Section XVIII — F-3-d (June 1979).

When Deborah Ash's claim came on for review, the administrator clearly did not follow his own ruling in the Ohio Claims Handbook and did not apply the prior decisions of the board of review despite his statutory duty to follow them. The board of review referred to the administrator's conduct in its decision mailed May 26, 1983. There it stated that "[t]he Bureau had no choice but to ignore the decisions of the Board of Review in the *Gerken* and *Poppenhouse* cases, once the position of the Department of Labor became known, or to face a conformity suit."

Although various administrators of the United States Department of Labor—Unemployment Insurance Service and Field Operations—had expressed concern that, in 1979, Ohio law was not consistent with federal law requirements, their suggested remedy was to seek "appropriate amendments to the Ohio law," *i.e.*, delete the words "same or similar capacity" from the statute.

Federal law disqualifies teachers for between-term benefits if "there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of

such academic years or terms," Section 3304(a)(6)(A)(i), Title 26, U.S. Code, without mentioning any "same or similar capacity" requirement.[2] However, this did not permit the Ohio administrator to disregard then-existing R.C. 4141.29(I)(2) and its interpretations by the board of review. The situation then present was that if Ohio did not change its law, the Secretary of Labor could have disqualified Ohio from receiving certain federal subsidies of its unemployment compensation program or disqualify Ohio employers from receiving federal tax credits available under Section 3302, Title 26, U. S. Code.

Federal law preempts state regulation when Congress intends to displace state law, *Maryland* v. *Louisiana* (1981), 451 U.S. 725, which intention may be inferred from a federal scheme so pervasive as to leave no room for states to supplement it. *AMCA Internatl. Corp.* v. *Krouse* (D. Ohio 1979), 482 F. Supp. 929. However, Congressional inducement by financial incentives, such as tax credits contained in Section 3302, Title 26, U. S. Code, does not *per se* displace state law. Here, Congress intended for the states to continue regulating unemployment law after enactment of the Emergency Jobs and Unemployment Assistance Act in 1974. Section 207 of that Act originally provided that otherwise consistent state unemployment compensation laws "which apply to claims thereunder for regular compensation and the payment thereof shall apply to claims for assistance under this title and the payment thereof." Pub. L. No. 93-567, 88 Stat., Part II, 1845, 1852 (1974). See, also, *County of Los Angeles* v. *Marshall* (C.A. D.C. 1980), 631 F. 2d 767, certiorari denied (1980), 449 U.S. 837, rehearing denied (1980), 449 U.S. 1026, and *New Hampshire Dept. of Emp. Security* v. *Marshall* (C.A.1, 1980), 616 F. 2d 240, certiorari denied (1980), 449 U.S. 806, for the proposition that the Federal Unemployment Tax Act does not violate states' sovereign integrity due to the *voluntary and wholly optional* aspects of the scheme embodied in the Act. Even when the states' regulations are in conflict, there is no federal authority to strike them down, but only to pursue a cause of action for non-conformity under Section 3304(c), Title 26, U. S. Code.

The administrator's response to possible conformity suits, which did not occur despite the *Gerken* and *Poppenhouse* decisions and the Ohio Claims Handbook, was to follow the revised federal interpretation of Section 3304(a)(6)(A), Title 26, U. S. Code, rather than Ohio law. Given the administrator's duty to apply Ohio law as it existed at the time the claim

---

[2] Although research discloses no case or statute forbidding taking hours and wages into account in determining the meaning of "same capacity," it appears, from certain correspondence, that the Department of Labor has interpreted such language as not requiring an application of suitability criteria such as wages, hours, etc., but as requiring professional work for professionals and non-professional work for non-professionals. (Attachment to letter dated February 8, 1980, from Zane E. Atkinson, Associate Regional Administrator for Unemployment Insurance to Albert Giles, Administrator for Ohio Bureau of Employment Services.)

arose, and his failure to do so in the case *sub judice,* we must hold that the administrator's decision was contrary to law in that it ignored previously determined Ohio law as to the meaning of the "same or similar capacity" language of then-existing R.C. 4141.29(I)(2). Otherwise eligible teachers whose full-time contracts for one academic term had been nonrenewed but who had been placed on a substitute teaching list for the next academic term and filed for unemployment compensation between terms between July 1980, the time the administrator adopted the federally desired interpretation of Ohio law, and November 18, 1983, the effective date of the amendment omitting the "same or similar capacity" language, must be found not to have reasonable assurance of the same or similar employment.

The General Assembly chose to change Ohio law to bring it into conformance with federal law in late 1983. See 140 Ohio Laws, Part II, 4108, 4116. Whether a teacher in a similar situation to appellant's would now qualify as having "reasonable assurance" under the current R.C. 4141.29(I)(1) or (2) is a question to be resolved in the first instance by the Unemployment Compensation Board of Review under R.C. 4141.06.[3] Since at the time Ash's claim arose, Ohio's interpretation of "same or similar capacity" language mandated that appellant be found not to have reasonable assurance of such, we are compelled to reverse the judgment of the court of appeals below.

*Judgment reversed.*

CELEBREZZE, C.J., PARRINO, LOCHER, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

PARRINO, J., of the Eighth Appellate District, sitting for SWEENEY, J.

---

[3] It must be noted that the statute existing at the time of appellant's claim allowed for retroactive benefits to all otherwise eligible school employees "as of the actual date the individual had no contract or no assurance" if it is later determined that the claimant did not actually have a contract or reasonable assurance. Former R.C. 4141.29(I)(2)(b) (138 Ohio Laws, Part II, 4386, 4420). The current statutory scheme omits any reference to retroactive payment of compensation for instructional, research, or principal administrative employees. See R.C. 4141.29(I)(1)(b).

The federal counterpart apparently provides the same distinction as current Ohio law—denying benefits to teachers, researchers, or principal administrators "if there is a contract or reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms," Section 3304(a)(6)(A)(i), Title 26, U.S. Code, but, with respect to individuals serving educational institutions "in any other capacity * * * if compensation is denied to any individual for any week under subclause (I) and such individual was not offered an opportunity to perform such services for the educational institution for the second of such academic years or terms, such individual shall be entitled to a retroactive payment of the compensation for each week for which the individual filed a timely claim for compensation and for which compensation was denied solely by reason of subclause (I)." Section 3304(a)(6)(A)(ii)(II), Title 26, U. S. Code.

CELEBREZZE, C.J., concurring. Our reversal of the judgment below is clearly justified because a full-time teacher, whose contract is not renewed at year's end for the upcoming school year and whose only assurance of reemployment is an agreement with the school board to be placed on a substitute teacher list for the next school year, does not have a "reasonable assurance" of employment in the upcoming academic year and therefore may not be denied unemployment benefits over the summer months pursuant to R.C. 4141.29(I) and Sections 3304(a)(6)(A)(i) and (ii), Title 26, U.S. Code. A contrary holding would provide that classroom teachers, whose full-time contracts are validly terminated, could not receive summer unemployment benefits where the discharging schools placed the fired teachers on substitute teaching lists.[4]

I write additionally to further explain and amplify today's decision. The "hiring" notice sent to Ms. Ash by the school board's treasurer advised her that "[y]ou will be on call as needed and as determined by the Board of Education."[5] The substitute teaching agreement did not con-

---

[4] In *Leissring* v. *Dept. of Industry* (1983), 115 Wis. 2d 475, 492-493, 340 N.W. 2d 533, 541, the Supreme Court of Wisconsin recognized the potential for abuse resulting from appellees' statutory construction: "* * * [A] school district could easily avoid the payment of unemployment compensation benefits during an intervening summer period by simply offering a teacher who previously had a contract for fulltime employment a de minimus contract to teach only one hour per day, or the possibility of substitute teaching with no guarantee of steady employment or a regular source of income. To allow an employer the opportunity to avoid liability for unemployment compensation benefits by merely offering some possibility of employment, no matter how minimal, creates the potential for abuse and is contrary to the general purpose of [the statute]."

[5] The limited teacher's contract sent to Ash described the offer as follows:
"Substitute Teacher to work as needed as determined by the Board of Education."
In *Leissring, supra*, at 489-490, 340 N.W. 2d at 539-540, the Wisconsin court articulated important reasons to allow benefits in such cases and also recognized the absurd and unreasonable results that appellees' interpretation would lead to:
"A teacher previously employed fulltime who becomes unemployed at the end of an academic year, and whose only employment prospect for the following year is a substitute teaching position involving no guaranteed hours or wages * * * is immediately confronted with a potential need to find alternative means of economic support. In addition, that individual may need to seek another teaching position in a severely restricted job market. If the teacher wants to secure another fulltime position for the next academic year, he or she must utilize the summer months for this job search, and will need economic aid for this purpose as well. This teacher is confronting a far different situation than the teacher who can look forward to resuming his or her fulltime employment in the fall. If the latter individual seeks unemployment compensation benefits over the summer period, it is possible that he or she is merely seeking a subsidized summer vacation, which * * * [the statute] is intended to prevent. The former teacher, who is unemployed at the end of the year, and realistically may remain unemployed in the fall, is not seeking benefits simply because he or she wants a subsidized summer vacation. Such benefits would likely be needed to meet current and future living expenses and to defray the expenses of seeking new employment. These are precisely the type of circumstances for which unemployment compensation has traditionally been intended. It is unreasonable to assume that this need for unemployment compensation benefits will not arise until the summer period ends."

stitute a "reasonable assurance" of employment even if these two very dissimilar positions are viewed as similar. In fact, the "contract" entered into did not guarantee nor even promise that appellant would ever receive *any* employment or remuneration.[6]

At best, Ash had a hope of being called in as a substitute teacher on a day-to-day basis. Other jurisdictions have also held that such teachers are eligible for unemployment benefits[7] and, contrary to appellees' contention, such a result *is* consistent with the federal Act. Representative of this better view is the decision in *Sulat* v. *Bd. of Review* (1980), 176 N.J. Super. 584, 589-590, 424 A. 2d 451, 453-454, which, in construing federal law and New Jersey's comparable statute, stated:

"Claimant here lost full-time employment; she should not be denied unemployment benefits because the school board relegated her to the uncertain status of a day-to-day substitute against her will, despite her clearly expressed desire to find full-time employment in education or, if necessary, elsewhere in the economy. This case is in vivid contrast to the many cases standing for the proposition that a substitute teacher has a disqualifying 'reasonable assurance' of employment if substitute teaching will be available in the succeeding year. * * *

"* * * [F]ull-time teachers under annual contract are not disqualified because, after lay-off, they are offered substitute teaching work. We conclude that 'services in any such capacity', [see Section 3304(a)(6)(A)(i), Title 26, U.S. Code, *and* Ohio R.C. 4141.29(I)(2)] in the circumstances, contemplates continuation of full-time services under an annual contract, not an offer of eligibility for day-to-day substitute services. We find this result fully consistent with the policy of our Unemployment Compensation Law and the federal act to ameliorate the impact of involuntary unemployment upon the employees and the general public as well."

Lastly, since appellant's interpretation of Ohio's Act is correct and has been held not to conflict with federal law, the General Assembly's goal of conforming state law to the federal Act is fulfilled.

---

[6] Arguably, this agreement could be viewed as an illusory promise; that is, the school system merely agreed to call Ash "for a substitute job if we want to." See 1 Restatement of the Law 2d, Contracts (1981) 194, Section 77; *Andreoli* v. *Brown* (1972), 35 Ohio App. 2d 53, 55 [64 O.O.2d 173]. In such cases, "[t]he consideration is to be tested by the agreement, and not by what was done under it." *Strong* v. *Sheffield* (1895), 144 N.Y. 392, 396, 39 N.E. 330, 331. Hence, it would be of no significance whether a school board actually called regarding a substitute job the following fall.

[7] *E.g., Fort Wayne Community Schools* v. *Review Bd.* (Ind. App. 1981), 428 N.E. 2d 1379; *Johnson* v. *Independent School Dist. No. 535* (Minn. 1980), 291 N.W. 2d 699; *Leissring* v. *Dept. of Industry* (1983), 115 Wis. 2d 475, 340 N.W. 2d 533; *Mallon* v. *Employment Div.* (1979), 41 Ore. App. 479, 599 P. 2d 1164; *Sulat* v. *Bd. of Review* (1980), 176 N.J. Super. 584, 424 A. 2d 451, followed in *Charatan* v. *Bd. of Review* (1985), 200 N.J. Super. 74, 490 A. 2d 352; cf. *Kelly* v. *Employment Div.* (1985), 74 Ore. App. 69, 701 P. 2d 448; *Whitley* v. *Bd. of Review* (1983), 116 Ill. App. 3d 476, 451 N.E. 2d 942.