**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4084-16T2

HAL SIMPKINS,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES, POLICE
AND FIREMEN'S RETIREMENT
SYSTEM,

     Respondent-Respondent.

_____

<div style="margin-left:2em">

Argued October 1, 2018 – Decided October 31, 2018

Before Judges Fasciale and Rose.

On appeal from the Board of Trustees, Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-10-052444.

John D. Feeley argued the cause for appellant (Feeley & LaRocca, LLC, attorneys; Pablo N. Blanco, of counsel and on the brief; John D. Feeley, on the brief).

Amy Chung, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

</div>

Attorney General, of counsel; John A. Lo Forese, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Hal Simpkins appeals from a May 9, 2017 final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS), denying his application for accidental disability retirement benefits pursuant to N.J.S.A. 43:16A-7. In doing so, the Board adopted the initial decision of the Administrative Law Judge (ALJ), finding petitioner's disability claim was not "undesigned and unexpected." We affirm.

I.

In February 2015, petitioner applied for accidental disability benefits, claiming he suffers from post-traumatic stress disorder (PTSD) following an incident that occurred during the course of his employment as a Newark police officer. In sum, during the course of an arrest, a suspect attempted "to run [petitioner] over with a stolen vehicle[,]" and petitioner's partner mistakenly fired shots in petitioner's direction to prevent the suspect from striking petitioner with the car.

The Board denied petitioner's application for accidental disability retirement benefits, determining "the event that caused [his] disability claim [was] not undesigned and unexpected." The Board further found

no evidence that the event was objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury; as [his injury] did not result from "direct personal experience of a terrifying or horror-inducing event that involved actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person."

Instead, the Board granted petitioner ordinary disability retirement benefits. N.J.S.A. 43:16A-6.

Thereafter, petitioner filed an administrative appeal and the matter was transmitted to the Office of Administrative Law as a contested case. Petitioner was the only witness to testify at the hearing. The ALJ also considered documentary evidence, including petitioner's application for disability retirement, job description, incident reports and a hand-drawn diagram of the incident.

The facts are essentially undisputed, and are accurately set forth, in pertinent part, in the ALJ's initial decision as follows:

> At approximately 2:53 p.m. on November 23, 2014, petitioner and his partner Police Officer Al-Tariq Whitley were dispatched to [an intersection in the City of Newark] in response to a report that a sick or injured man appeared to be slumped over a steering wheel in a parked car there. Officer Whitley was driving the patrol car and petitioner was in the passenger seat. As they pulled alongside of the vehicle in question, which was parked at the curb, the man stirred. The officers

had been advised by dispatch that the vehicle had been reported as stolen and to proceed, therefore, with caution. Petitioner exited the patrol car and went to the front of the vehicle. Officer Whitley stood at the driver's side window. The suspect locked the doors. He appeared to be an older man, possibly homeless, with a scruffy beard.

Petitioner banged on the hood of the vehicle and then took a step or two back. The suspect was not responsive to the officers' commands. The suspect bent down to pick up an object[,] which turned out not to be a gun but petitioner drew his service revolver. Then the vehicle started to move. Events transpired very fast from there. Officer Whitley apparently thought the suspect was going to run over petitioner. Petitioner heard shots coming past [his head]. He next recalled being on the other side of the street. The suspect vehicle jumped the sidewalk and struck a tree, a street sign and then continued down [the] street. During the incident, the magazine of petitioner's weapon had been ejected and he retrieved it. While he only remembered shooting his own weapon two times, the weapon had been fired four times. In these moments, petitioner was very afraid of dying from either the car or the shots fired by his partner. Petitioner went to [a hospital] for evaluation and was then released without admission.

Petitioner described his police training as including the instructions that an officer should not point and fire a weapon if a non-suspect is in the way. He further stated that an officer is expected to fire his weapon if there is an imminent threat until the threat is abated.

On cross-examination, petitioner testified that he has been involved in apprehending dangerous and armed suspects but in his entire career, he had never

4

been involved in a shooting. Further, he had only heard shots from a safe distance in the past. Petitioner had responded to reports of shootings several times a year. Auto thefts were more frequent but it is not an everyday occurrence that a person will be found in the stolen vehicle. Petitioner described his most common assignments as arriving at a scene after the crime is completed and thereafter filing a report. In his twenty-one years, he had had a vehicle in "hot pursuit" maybe five times, and apprehended an armed suspect a similar number of times. In his entire career, he ha[d] never fired his service weapon, nor been threatened by a weapon or a vehicle as in this incident.

In a comprehensive written decision issued on March 30, 2017, the ALJ distinguished between ordinary and accidental disability retirement benefits, particularly in the context of a psychiatric disability with a "non-physical root cause, such as witnessing a horrific event." In doing so, the ALJ cited our Supreme Court's decisions in Patterson v. Board of Trustees, State Police Retirement System, 194 N.J. 29 (2008) and Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189 (2007), recognizing that a petitioner must first demonstrate that "the traumatic event is objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury[,]" see Patterson, 194 N.J. at 34, and must then further establish that the event was "undesigned and unexpected." See Richardson, 192 N.J. at 212.

5

According to the ALJ, assuming the events that formed the basis of petitioner's claim constituted "a horrifying and traumatic event," see Patterson, 194 N.J. at 50, they did not meet "the definition of unexpected in the line of work of a police officer." See Richardson, 192 N.J. at 212-13. The ALJ therefore recommended affirming the Board's determination, which denied petitioner's application for accidental retirement benefits. This appeal followed.

On appeal, petitioner contends he is entitled to an accidental disability retirement pension because the incident meets the definition of a traumatic event pursuant to N.J.S.A. 43:16A-7. Further, the incident was undesigned and unexpected and his injury resulted from a terrifying or horror-inducing event involving threatened death or serious bodily injury.

<center>II</center>

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or

<center>6</center>

unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (internal quotation marks omitted) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980). That said, appellate courts review de novo an agency's interpretation of a statute or case law. Russo, 206 N.J. at 27.

The PFRS provides for both ordinary, N.J.S.A. 43:16A-6, and accidental, N.J.S.A. 43:16A-7(1), disability benefits. "[A]n accidental disability retirement

entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Patterson, 194 N.J. at 43. In Richardson, the Court held that a claimant for accidental disability retirement benefits must prove:

> 1. that he is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>   a. identifiable as to time and place,
>
>   b. undesigned and unexpected, and
>
>   c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and
>
> 5. that the member is mentally or physically incapacitated from performing his usual or any other duty.
>
> [192 N.J. at 212-13.]

The Court defined a "traumatic event" as "essentially the same as what we historically understood an accident to be—an unexpected external happening

that directly causes injury and is not the result of pre-existing disease alone or in combination with work effort." Id. at 212.

A petitioner who has suffered a "permanent mental disability as a result of a mental stressor, without any physical impact," must meet an additional requirement to qualify for an accidental disability retirement. Patterson, 194 N.J. at 33. In Patterson, the Court held:

> The disability must result from direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person. By that addition, we achieve the important assurance that the traumatic event posited as the basis for an accidental disability pension is not inconsequential but is objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury.
>
> [Id. at 34.]

In Russo, the Court clarified that the objective reasonableness standard is met after a petitioner has experienced a "terrifying or horror-inducing event[.]" 206 N.J. at 33 (internal quotation marks omitted). Nonetheless, we have held that "the diagnostic criteria for PTSD are not identical to the Patterson requirement." Thompson v. Bd. of Trs., Teachers' Pension & Annuity Fund, 449 N.J. Super. 478, 495 (App. Div. 2017), aff'd o.b., 233 N.J. 232 (2018). "[T]he

9

Supreme Court in <u>Patterson</u> . . . did not hold that any employee who obtains a PTSD diagnosis qualifies for accidental disability benefits." <u>Ibid.</u>

The Court has recently summarized a two-part analysis in cases of permanent mental incapacity resulting from "an exclusively psychological trauma." <u>Mount v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 233 N.J. 402, 426 (2018). Specifically,

> The court first determines whether the member directly experienced a "terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person." . . . If the event meets the <u>Patterson</u> test, the court then applies the <u>Richardson</u> factors to the member's application.
>
> [<u>Ibid.</u> (quoting <u>Patterson</u>, 194 N.J. at 50).]

Here, assuming arguendo, as did the ALJ, that petitioner satisfied <u>Patterson</u>, he did not satisfy the <u>Richardson</u> factors. <u>Ibid.</u> In particular, as the ALJ correctly concluded, the events "d[id] not come within the definition of unexpected in the line of work of a police officer." <u>See Richardson</u>, 192 N.J. at 212-13. As the Court observed in <u>Russo</u>, "an employee who experiences a horrific event which falls within his job description and for which he has been trained will be unlikely to pass the 'undesigned and unexpected' test." 206 N.J.

10

at 33. Nonetheless, the Court recently clarified in <u>Mount</u> that "the Board and a reviewing court must carefully consider not only the member's job responsibilities and training, but all aspects of the event itself. No single factor governs the analysis." 233 N.J. at 427.

Applying these principles here, we are satisfied the events were not "undesigned and unexpected" as required by <u>Richardson</u>. 192 N.J. at 212. Petitioner was a trained police officer. Specifically, he was a twenty one-year veteran, trained in discharging his service weapon when faced with an imminent threat, and in evading suspects "engag[ed] in using a vehicle as a weapon." Among petitioner's duties were making arrests and investigating street crimes, including stolen vehicles. Some of those investigations could be expected to involve the discharging of a service weapon where, as here, the officers were faced with an imminent threat of death or serious bodily injury. There was nothing here that fell outside the scope of petitioner's general duties as a police officer. He was not placed in a situation where he lacked equipment or training. Rather, given his patrol duties, it was not unreasonable for petitioner to anticipate that violence might occur.

Having carefully considered petitioner's job responsibilities and training, and the circumstances of the events here, we agree that the Board's decision

11

adopting the findings of the ALJ was not arbitrary, capricious or unreasonable. Indeed, as the ALJ aptly noted, "If every police officer who was ever near the line of fire or had to take evasive action in trying to arrest a dangerous suspect qualified for accidental disability retirement [benefits] after each such event, police departments around this State would be quickly decimated."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-4084-16T2