**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4040-19

LYNN SCHROEDER,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and FREEDOM HOME
HEALTHCARE, INC.,

     Respondents.

_____

Argued November 9, 2021 – Decided February 3, 2022

Before Judges Haas and Mitterhoff.

On appeal from the Board of Review, Department of Labor, Docket No. 192411.

Sarah Hymowitz argued the cause for appellant (Legal Services of New Jersey, attorneys; Sarah Hymowitz and Melville D. Miller, on the briefs).

Rimma Razhba, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Sookie Bae-Park, Assistant

Attorney General, of counsel; Rimma Razhba, on the brief).

PER CURIAM

Lynn Schroeder appeals the May 28, 2020 final decision of the Board of Review (Board), affirming the Appeal Tribunal's decision that she was disqualified from receiving unemployment benefits. We affirm.

We discern the following facts from the record. Schroeder works as a certified home health care aide and has worked for multiple home health agencies that require her to travel to various locations in New Jersey. She suffers from "severe anxiety" and has been enrolled in Career Services at Saint Clare's Behavioral Health Program since October 2016. The purpose of the program is "to assist individuals with persistent mental illnesses to choose, get, and keep employment and/or support them in their efforts to secure post-secondary education or attend a trade school." Schroeder 's anxiety is exacerbated when she must travel long distances or navigate unfamiliar territory.

On March 9, 2018, Schroeder was hired by Freedom Home Health Care, Inc. (Freedom Home).[1] Once hired, Schroeder informed the company she could

---

[1] Schroeder worked for Freedom Home on a per diem basis, typically for fifteen to twenty-five hours per week. The record is unclear as to whether she was employed by other companies at this time.

not commute long distances, yet she consistently received assignments that required an hour's commute. She raised concerns over the commute time with her employer and was told that the company would look into giving her closer assignments. Ultimately, none were available during her six-month tenure. Prior to working for Freedom Home, Schroeder could consistently get work closer to home, limiting her commute. She resigned on September 15, 2018.

Ann Marie Flake, Team Leader of Career Services at Saint Clare's, provided a letter to the Appeal Tribunal documenting Schroeder's difficulty with work, explaining that:

> [Schroeder] reported being late to work and feeling increasingly anxious and overwhelmed due to the long distance of her assignments, unfamiliar territory[,] and heavy traffic patterns.
>
> [Schroeder] indicated the assignments in Bergen County were impacting her mental health. She discussed her work experiences with her Career Coach as well as with her therapist and treating psychiatrist, Michael von Poelnitz, MD. [Schroeder], concerned about her exacerbated symptoms and the elevated risk of rehospitalization, felt her only option was to resign from her position, which she did on 9/[15]/18.

Schroeder did not provide any medical documentation to her employer regarding her condition or need for a shorter commute. During the Appeal Tribunal

hearing, she explained that she "voluntarily" resigned from her job after it became too much for her.

Schroeder's employer also acknowledged that she had never provided any documentation in support of her condition. Her employer explained it had no record of Schroeder requesting to change assignments, and that company policy in fact allowed employees to do so with two-weeks' notice. The employer's witness also testified "what we have noted in the system is that her first response to leaving was she was going another way . . . she was offered another job. The second thing . . . was she was resigning due to too much wear and tear on her vehicle." The employer's witness did not have any first-hand contact with Schroeder and began working at the company after she resigned.

After resigning, Schroeder returned to Right at Home,[2] a home health care agency for which she previously worked. She was able to get assignments with shorter commutes at her new job than she was able to get at Freedom Home.

_____

[2] The record is unclear regarding whether Schroeder was working for Right at Home at the same time she was working for Freedom Home, or if she left Freedom Home to return to Right at Home after a period of absence. Portions of the record state that Schroeder returned to Right at Home after resigning, however, Schroeder implied in her testimony before the Appeal Tribunal that she had never stopped working for Right at Home.

A-4040-19

On July 29, 2018, Schroeder filed a claim for unemployment benefits.[3] She received benefits in the amount of $6,440 for the weeks ending August 4, 2018 through August 11, 2018, and December 1, 2018 through May 25, 2019. On August 23, 2019, a New Jersey Department of Labor deputy disqualified her from receiving unemployment benefits because she left work voluntarily without good cause attributable to work. On the same day, the NJDOL sent Schroeder a request for refund in the amount of $6,440 for the benefits already received. She appealed both determinations to the Appeal Tribunal on September 11, 2019.[4] The Tribunal conducted a telephonic hearing on March 2, 2020, during which Schroeder, who was represented by counsel, and a witness for her employer testified.

On March 4, 2020, the Tribunal affirmed the deputy's determination that Schroeder was disqualified from receiving benefits because she voluntarily left work without good cause attributable to the work. The Tribunal grounded its decision in the fact that she failed to tell her employer or provide medical

[3] Schroeder did not end her employment with Freedom Home until September 15, 2018 and the record does not explain why she filed her claim for unemployment benefits in July.

[4] The issue regarding the request for refund has not been appealed and is not before this panel.

A-4040-19

certification to her employer that her condition was being aggravated by the commute. The Tribunal also affirmed the Director's request for a refund because Schroeder was obligated to repay the benefits that were overpaid to her.

Schroeder appealed the Tribunal's decision to the Board of Review on March 9, 2020. The Board of Review affirmed the Tribunal in a decision dated May 28, 2020.

On appeal, Schroeder presents the following arguments for our consideration:

POINT I:

MS. SCHROEDER IS ENTITLED TO UNEMPLOYMENT BENEFITS BECAUSE THE WORK AT FREEDOM HO[M]E WAS UNSUITABLE FOR HER.

POINT II:

THE APPEAL TRIBUNAL'S FINDINGS OF FACT DID NOT ADEQUATELY REFLECT MS. SCHROEDER'S CREDIBLE TESTIMONY, AND THE BOARD OF REVIEW FAILED TO MAKE OR ADOPT ANY FINDINGS OF FACT.

Appellate review of final administrative agency decisions is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017). "[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same

6

conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)).

"If the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Rev., 91 N.J. 453, 459 (1982)). This court should give due regard to the agency's credibility findings. Logan v. Bd. of Rev., 299 N.J. Super. 346, 348 (App. Div. 1997). Unless "the agency's action was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed." Brady, 152 N.J. at 210. While this court grants substantial deference to an agency's finding of fact, "to the extent [the agency's] determination constitutes a legal conclusion," this court's review is de novo. Lavezzi v. State, 219 N.J. 163, 172 (2014).

Schroeder argues that the Department of Labor's Failure to conduct a suitability analysis as required by N.J.A.C. 12:17-11.1–12:17-11.5 renders the agency's decision arbitrary, capricious, and unreasonable. We disagree.

Under N.J.S.A. 43:21-5(a), a person is ineligible for unemployment benefits if he or she leaves work "voluntarily without good cause attributable to such work[.]" N.J.A.C. 12:17-9.1(b) defines "good cause attributable to such

work" as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment." Individuals who leave work for a legitimate, but personal reason, however, do not qualify for unemployment compensation under N.J.S.A. 43:21-5(a). See Brady, 152 N.J. at 213 (1997) (stating N.J.S.A. 43:21-5(a) was amended "in 1961 to disqualify claimants who left work for purely personal reasons."). Such reasons include voluntarily terminating one's employment because the requirements of the work are harmful to a pre-existing condition which does not have a work-related origin. Stauhs v. Bd. of Rev., 93 N.J. Super. 451, 457-58 (App. Div. 1967).

"When a non-work connected physical and/or mental condition makes it necessary for an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work." N.J.A.C. 12:17-9.3(b). However, "an individual who has been absent because of a . . . [pre-existing] mental condition shall not be subject to disqualification for voluntarily leaving work if the individual has made a reasonable effort to preserve his or her employment but has still been terminated by the employer." N.J.A.C. 12:17-9.3(c). An employee's "reasonable effort is evidenced by the

employee's notification to the employer, requesting a leave of absence[,] or having taken other steps to protect his or her employment." Ibid.

In this case, Schroeder left her employment at Freedom Home without ever providing any documentation regarding her condition or her need for assignments closer to home. Her resignation was of her own volition and related to a non-work connected pre-existing mental health condition. She also was not terminated by her employer after taking steps to protect her job and being absent due to her condition. As a result, under N.J.S.A. 43:21-5(a), Schroeder was properly disqualified from receiving unemployment benefits because she left voluntarily.

Schroeder relies on Wojcik v. Bd. of Rev., 58 N.J. 341 (1971) in arguing that the Board of Review should have conducted a suitability of work analysis under N.J.S.A. 43:21-5(c) and N.J.A.C. 12:17-11.1. The regulation states "[a]n individual shall be disqualified for benefits if it is found that the individual has failed, without good cause, either to apply for available suitable work when directed by the employment service office or the Director, or to accept suitable work when it is offered." N.J.A.C. 12:17-11.1. In Wojcik, the claimant was a graduate chemical engineer who worked as a manufacturing engineer. 58 N.J. at 343. He was discharged by his employer and subsequently applied for, and

9

was found eligible to receive, unemployment compensation. Ibid. The claimant could not find work in his own profession, so he took a job performing general factory work which he could have declined as unsuitable due to a pre-existing back injury. Ibid. The manufacturing job required strenuous physical activity and was therefore unsuitable for him. After learning of the seriousness of his back condition, the claimant asked his factory employer if there was any lighter work he could perform. Id. at 344. No lighter work was available, so he resigned. Ibid.

The claimant argued that he should not be disqualified from receiving benefits from the loss of his original job for taking a job he could have denied as unsuitable and then leaving that job because of its unsuitable nature. Id. at 345. The Supreme Court explained:

> It is clear that one need only apply for and accept suitable work. It is equally clear that in the present case Wojcik could have refused the work at [the second job] as not being "suitable." It involved a substantial reduction from his "prior earnings" and was totally inconsistent with his "prior training" and "experience." Moreover, the work constituted a "risk to his health" and "safety" and, in light of this risk, he was physically unfit for the job. The question is whether a person who takes work he is not required to take should suffer the loss of unemployment benefits when he is unable to cope with that work. We do not believe he should. A contrary result would inhibit persons who are temporarily unemployed from taking work which,

A-4040-19

although not commensurate with their former employment, is nevertheless gainful activity which serves the general public interest. We do not believe a person should be penalized for so laudable an effort.

[(Id. at 345-46) (internal citations omitted).]

Schroeder's reliance on Wojcik is unfounded. In Wojcik, the claimant was involuntarily discharged. He then accepted unsuitable work, from which he ultimately had to resign. The Supreme Court determined that a claimant should not be punished though denial of unemployment benefits for his efforts to seek and maintain gainful employment, and its suitability analysis focused the qualities of the second job. Schroeder, by contrast, did not seek unemployment benefits related to a prior job and then accept an unsuitable job at Freedom Home in an effort to reemploy herself. She instead sought unemployment benefits based on her voluntary resignation from Freedom Home.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4040-19