**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1508-22

DAMARIS A. TAYLOR,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and NATIONAL RECOVERY
ASSOCIATES, INC.,

     Respondents.

_____

Submitted October 9, 2024 – Decided October 30, 2024

Before Judges Currier and Torregrossa-O'Connor.

On appeal from the Board of Review, Department of Labor, Docket No. 244730.

Tonacchio, Spina & Compitello, LLC, attorneys for appellant (Matthew Dourdis, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent Board of Review, Department of Labor (Donna Arons, Assistant Attorney General, of counsel; Eric A. Zimmerman, Deputy Attorney General, on the brief).

PER CURIAM

Claimant Damaris A. Taylor appeals from the final agency decision of the Board of Review, New Jersey Department of Labor (Board), denying in part her claim for Pandemic Unemployment Assistance (PUA) under the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 15 U.S.C. §§ 9001-9141. Affording deference to the Board's determination that claimant was ineligible for PUA benefits after June 28, 2020, we affirm.

I.

Claimant worked as a project manager for National Recovery Associates, Inc., from November 14, 2019, until she admittedly "[r]esigned" her position on February 26, 2020, for self-described "[p]ersonal reasons." Claimant filed for unemployment benefits, N.J.S.A. 43:21-1 to -71, and thereafter for PUA, claiming she resigned her job to care for her children, then ages twelve, ten, four, and two, due to COVID-19 concerns for her family's safety.

On March 2, 2021, claimant received notice from the Division of Unemployment Insurance, advising she was disqualified from traditional unemployment benefits as she resigned from her job voluntarily without good cause attributable to her work. See N.J.S.A. 43:21-5. The notice further deemed her ineligible for PUA under the CARES Act because her unemployment was

not due to a statutorily enumerated qualifying reason. See 15 U.S.C. § 9021(a)(3)(A)(ii)(I).

Claimant appealed, and the Appeal Tribunal conducted a hearing on April 23, 2021. Claimant testified and confirmed that she resigned because of her own fear for her family's safety as COVID-19 began to spread. She explained that upon resigning from her position, she immediately removed her youngest child from daycare, which remained open, as did the schools attended by her older children.

By written decision, the Appeal Tribunal found claimant disqualified from regular unemployment benefits under N.J.S.A. 43:21-5, as claimant's "decision to leave work was ultimately for reasons not connected to the work itself." The Tribunal also denied any claim for PUA benefits, finding claimant failed to establish eligibility under one of the qualifying COVID-19-related reasons under the CARES Act. Specifically, the Tribunal found claimant "left work at a time when it was open and there were no school or childcare closures affecting her ability to work." The Tribunal determined that her voluntary resignation was due to "her fears" of COVID-19, which, without more, was not a covered reason under the CARES Act.

A-1508-22

On appeal, the Board affirmed the Tribunal's denial of regular unemployment benefits but remanded for a new hearing and additional testimony regarding the PUA claims. A second hearing took place before the Appeal Tribunal on March 1, 2022.

Testimony at the second hearing revealed that the schools and daycare facilities attended by claimant's children were closed due to COVID-19 on March 13, 2020 and remained closed until the school year ended on June 24, 2020. Claimant, represented by counsel, testified that the children's typical summer camps and daycare were reopened on June 15, 2020, providing child care options. Claimant explained that she chose to not enroll the children in summer camp as she deemed her husband "immunocompromised." When asked whether she was instructed by a doctor to "isolate for the whole family," she replied, "[w]e were just told to do best practices, keep masked up, [and] social distance."

Claimant further testified she could have worked at that time, including remotely, because her husband "had the freedom to work from home." She further conceded that although her husband and her youngest child had "the flu" in early 2020, no one in her family was ever diagnosed with COVID-19. When

asked whether her husband "could have watched the kids, [so she] would have been available to go to work," she responded, "[a]bsolutely."

The Appeal Tribunal issued a written decision, finding that from May 10, 2020 through June 27, 2020, claimant was unable to work due directly to the COVID-19 pandemic and therefore qualified for PUA benefits under the CARES Act during that period of time. However, for the period after June 28, 2020 through April 10, 2021, the Tribunal, determined that claimant's husband was working from home and available for child care, making claimant available to work from June 28, 2020 forward.

Claimant again appealed. In a letter to the Board, claimant indicated her husband, although working from home during the period between June 28, 2020 and April 10, 2021, was unavailable to care for the children due to the demands of his job as a call center representative.

Finding claimant had the opportunity at two separate hearings to offer "any and all evidence" to support her claims, the Board determined there was "no valid ground for a further hearing." The Board found claimant's request for benefits "from June 28, 2020 through April 10, 2021 contradict[ed] her own testimony that she was available for work during the period in which her husband worked remotely from home." Thus, the Board "agree[d] with the

decision reached" by the Appeal Tribunal, finding claimant's availability to work during that period "was not impacted by the COVID-19 pandemic," within the meaning of Section 2102(a)(3)(A)(ii)(I) of the CARES Act, 15 U.S.C. § 9021(a)(3)(A)(ii)(I).

## II.

On appeal, claimant argues the Board did not conduct a proper analysis of the record and overlooked her husband's inability to care for the children; failed to consider that claimant would have continued to work if given a remote option; gave no weight to claimant's husband's flu in early 2020; and determined arbitrarily that claimant "contradicted her own testimony."

## III.

"We review a decision made by an administrative agency entrusted to apply and enforce a statutory scheme under an enhanced deferential standard." E. Bay Drywall, LLC v. Dep't of Lab. & Workforce Dev., 251 N.J. 477, 493 (2022). Accordingly, "we will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Sullivan v. Bd. of Rev., Dep't of Lab., 471 N.J. Super. 147, 155-56 (App. Div. 2022) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). The

6

burden to show an agency's abuse of discretion "is on the challenger." Parsells v. Bd. of Educ., 472 N.J. Super. 369, 376 (App. Div. 2022).

"'[I]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs.'" Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)). Further, we afford "[w]ide discretion . . . to administrative decisions because of an agency's specialized knowledge." In re Request to Modify Prison Sentences, 242 N.J. 357, 390 (2020); see also Sullivan, 471 N.J. Super. at 156.

IV.

We discern no abuse of discretion in the Board's determination, rooted in the hearing record, denying PUA benefits after June 28, 2020. Congress enacted the CARES Act as a vehicle to afford PUA benefits to certain "covered individual[s]" otherwise ineligible for regular unemployment benefits during the pandemic, but unemployed for one of the COVID-19-related reasons listed in the statute. See Sullivan, 471 N.J. Super. at 153; see also 15 U.S.C. § 9021.

A-1508-22

The CARES Act narrowly defines a "covered individual" in pertinent part as one who:

> (i) is not eligible for regular compensation or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 . . . including an individual who has exhausted all rights to regular unemployment or extended benefits under State or Federal law or pandemic emergency unemployment compensation under section 9025 . . . .
>
> (ii) provides self-certification that the individual—
>
>> (I) is otherwise able to work and available for work within the meaning of applicable State law, except the individual is unemployed, partially unemployed, or unable or unavailable to work because—
>>
>>> (aa) the individual has been diagnosed with COVID-19 or is experiencing symptoms of COVID-19 and seeking a medical diagnosis;
>>>
>>> (bb) a member of the individual's household has been diagnosed with COVID-19;
>>>
>>> (cc) the individual is providing care for a family member or a member of the individual's household who has been diagnosed with COVID-19;
>>>
>>> (dd) a child or other person in the household for which the individual has primary caregiving responsibility is unable to attend school or another facility that is

closed as a direct result of the COVID-19 public health emergency and such school or facility care is required for the individual to work;

(ee) the individual is unable to reach the place of employment because of a quarantine imposed as a direct result of the COVID-19 public health emergency;

(ff) the individual is unable to reach the place of employment because the individual has been advised by a health care provider to self-quarantine due to concerns related to COVID-19;

(gg) the individual was scheduled to commence employment and does not have a job or is unable to reach the job as a direct result of the COVID-19 public health emergency;

(hh) the individual has become the breadwinner or major support for a household because the head of the household has died as a direct result of COVID-19;

(ii) the individual has to quit his or her job as a direct result of COVID-19;

(jj) the individual's place of employment is closed as a direct result of the COVID-19 public health emergency; or

(kk) the individual meets any additional criteria established by the Secretary for

9

> unemployment assistance under this section.

> [15 U.S.C. § 9021(a)(3)(A).]

A covered individual does not include "an individual who has the ability to telework with pay." 15 U.S.C. § 9021(a)(3)(B)(i).

The record sufficiently supports the Board's decision that claimant was not eligible for PUA benefits after June 28, 2020, as she did not fall within one of the enumerated statutory categories. Claimant testified that she elected not to utilize open and available summer camp and daycare options after June 28, 2020. She further explained that she was available to work at that time as her husband worked from their home. She also confirmed that neither she nor any member of her family contracted COVID-19 during that time.

We are mindful of "the hardship many people . . . endured during the 2020 lockdown as a result of the COVID-19 pandemic," Sullivan, 471 N.J. Super. at 152, and the challenges families faced at that unprecedented time. Nevertheless, we discern nothing arbitrary, capricious, or unreasonable about the Board's determination that claimant was not unemployed "due to one of the COVID-19 related reasons identified in Section 2102 (a)(3)(A)(ii)(I) of the CARES Act." See 15 U.S.C. § 9021(a)(3)(A)(ii)(I).

The Board relied on the record to decide that claimant's unemployment after June 28, 2020 was a personal election that fell outside of the carefully defined eligibility requirements of the CARES Act. Claimant asserted for the first time on her second appeal to the Board that her husband was not an available caregiver for the children, in direct contrast to her prior hearing testimony. We will not interfere with the Board's discretionary determination that claimant was not entitled to a new hearing having already had two opportunities to present her claim for benefits during which she testified she was available to work after June 28, 2020. Here, the record amply supports the Board's findings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-1508-22