**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3364-23

JACQUELINE C. LAHM,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR, and
CARING PEOPLE NJ
OPERATING, LLC,

     Respondents.

_____

Submitted December 2, 2025 – Decided February 5, 2026

Before Judges DeAlmeida and Torregrossa-O'Connor.

On appeal from the Board of Review, Division of Unemployment Insurance, Department of Labor and Workforce Development, Docket No. 314586.

Law Firm of William Koy, LLP, attorneys for appellant (William F. Koy, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent Board of Review (Christopher Weber, Assistant Attorney General, of counsel; Rimma Razhba, Deputy Attorney General, on the brief).

PER CURIAM

Claimant Jacqueline Lahm appeals from a final agency decision by the Board of Review, Department of Labor (the Board), determining she falsely represented her eligibility for unemployment benefits, disqualifying her from further benefits for a one-year period, and requiring her to refund the benefits received and pay a fine. Claimant argues her failure to disclose earnings in her certified submissions resulted from her mistaken understanding of the nature of her claim, which should excuse any error and relieve her of any obligation to refund payments or pay a fine. Because we are satisfied the Board's determination is supported by substantial credible evidence and discern nothing arbitrary, capricious, or unreasonable in the Board's decision, we affirm.

I.

Claimant worked as a licensed practical nurse for Caring People New Jersey, LLC (Caring People), from June 2017 to October 2022, and for another employer, Crystal Lake from 1991 to 2020. When her employment with Crystal Lake ended, she applied for unemployment benefits despite remaining employed by Caring People. Claimant's application was approved. While receiving benefits, claimant provided regular online certifications in which she either failed to disclose or underreported her wages from Caring People.

A-3364-23

By notice to claimant dated October 3, 2022, the Director of the Division of Unemployment Insurance imposed a one-year disqualification for future benefits pursuant to N.J.S.A. 43:21-5(g)(1), following a determination claimant had illegally received benefits based upon false or fraudulent representations in her claim submissions. The notice further advised claimant was liable pursuant to N.J.S.A. 43:21-16(d) to refund State benefits in the amount of $6,675 for payments from the week ending May 2, 2020 through October 24, 2020, and $11,741 in federal benefits for the weeks ending October 31, 2020 through December 12, 2020, and from January 2, 2021 through September 4, 2021. The notice included imposition of a fine in the amount of $4,599.50 pursuant to N.J.S.A. 43:21-16(a).

Claimant appealed the Director's determination and was granted a hearing before the Appeal Tribunal, which took place on February 10, 2023. Claimant testified, as did Division of Fraud Prevention and Risk Management Investigator Cory White, who evaluated the alleged overpayment of benefits to claimant. The investigator testified a claims audit revealed conflicting wage information from Caring People showing earnings by claimant during the periods for which she received unemployment benefits. White indicated a "fact finding letter" was sent to claimant in September 2022 concerning the audit and potential

overpayment of benefits, to which she responded in writing on September 14. According to the investigator, claimant's response "detailed frustration using the unemployment website," and stated she was "collecting due to a reduction in hours" and "quarantine." White indicated claimant also included a doctor's letter dated April 6, 2022, stating a "need for quarantine," and a "positive C[OVID-19] test dated August 10, 2021." Claimant's response also included a "written note stating . . . the amount in question is incorrect," but according to White "no evidence disputing the reported earnings was provided."

White chronicled claimant's weekly electronic claim submissions and the conflicting earnings reported by Caring People, and corresponding documentation was admitted into the record. He explained "the fraud determination was made since there were more than four weeks [claimant reported] zero wages . . . . Specifically, [seventy-nine] of the [eighty-nine] weeks in conflict had zero wages reported." White detailed the online weekly claim certification process, which included a specific inquiry of claimant, asking, "[D]id you work during the weeks claimed?" According to the investigator, an affirmative response by claimant would prompt follow-up questions concerning the amount earned and the employer who paid the wages.

White further explained the online system notifies claimants in writing on a "[b]ig red" screen that "collecting unemployment insurance benefits while working is a crime." The certifying claimant is then required "to click that they accept in order to proceed." The investigator further represented the website provides guidance "detailing how to claim benefits properly."

Claimant testified conceding she filed an unemployment claim and received weekly benefits in the amounts the investigator itemized. Claimant also admitted she worked as a nurse for Caring People from June 2017 to October 2022 and either "did not report or underreported" those earnings in her unemployment certifications.

She claimed she collected unemployment benefits while working for Caring People "[u]nder the assumption that it was [a] . . . partial unemployment claim from [her] other job" with Crystal Lake. Claimant testified she used the online certification system and "followed the C[ARES[1]] Act Pandemic System that is presented prior to claiming," alleging Caring People's Human Resources advised her to continue to submit for benefits. She testified she was quarantined

---

[1] Pandemic Unemployment Assistance (PUA) is an alternative form of relief for those not otherwise eligible for traditional unemployment and provided under the Coronavirus (COVID-19) Aid, Relief, and Economic Security (CARES) Act, 15 U.S.C. §§ 9001-9141.

"every other week" while working at Crystal Lake, and because she had preexisting health issues, her "doctor suggested that [she] quarantine." She stopped working at Crystal Lake on April 12, 2020.

Claimant initially admitted she read and acknowledged the fraud warnings when certifying her claims, but then indicated she could not recall but "guess[ed] [she] did." She emphasized she did not submit false information deliberately, although she acknowledged roughly ten submissions in which she reported some earnings in incorrect amounts despite typically failing to report any wages. She testified she could not explain why she made those occasional inaccurate representations.

By written decision mailed March 2, 2023, the Appeal Tribunal affirmed the Director's determination and denied claimant's appeal. The written decision included a detailed itemization of the benefits claims made, wages reported, wages earned, and overpayments.

The Appeal Tribunal "rejected" claimant's contention "she did not report the wages because she thought that she was collecting benefits from another employer." The Appeal Tribunal reasoned:

> During the online certification process, . . . claimant repeatedly answered no to the question . . . which asks "did you work during the weeks claimed?" The question is generic and does not ask for a specific

6

employer.  The claimant also acknowledged when certifying online, that she read the internet warning by certifying for benefits, which states that "collecting unemployment benefits while working and not reporting wages is a crime."  The warning goes on to state that you must report any wages earned in the week, and explains the meaning of wages.

The Appeal Tribunal also emphasized, "Although under-reported, . . . claimant reported wages for six weeks."  Thus, the Appeal Tribunal observed, "[t]his indicates that . . . claimant had knowledge of how to report wages."  Accordingly, the Appeal Tribunal found claimant's benefits resulted from "false or fraudulent representation[s]," disqualifying her for benefits for a one-year period commencing from the time of the fraud's discovery—October 3, 2022.  It further determined claimant's wages were not reported for the periods between weeks ending May 2, 2020 through October 24, 2020, October 31, 2020 through December 12, 2020, and January 2, 2021 through September 4, 2021.  Accordingly, the Appeal Tribunal ordered refunds of $6,675 for illegally obtained State benefits and $11,741 for federal benefits, and imposed a fine of $4,599.50.

Claimant sent a letter to the Board dated February 27, 2023, appealing the Appeal Tribunal's decision and claiming she was approved for PUA, not for traditional unemployment benefits.  She indicated she was approved for PUA

7

benefits after she separated from her "second job" due to "severe risk of exposure." She attached no documentation or evidence to support her claims that she "was acting as . . . directed by [u]nemployment."

By written decision, mailed on May 22, 2024, the Board affirmed the Appeal Tribunal's determination. It determined claimant received "a full and impartial hearing" and was afforded "a complete opportunity to offer any and all evidence," and found "no valid ground for a further hearing." The Board "agree[d] with the decision," correcting only incorrect claim dates.[2]

## II.

On appeal, claimant reprises her arguments made before the Appeal Tribunal and the Board. Once again, she does not challenge the Board's calculations of benefits paid and wages earned; instead, she contends the Board erred in affirming the Appeal Tribunal's determination her unemployment benefits were derived from her false or fraudulent representations and omissions. She contends she qualified for PUA benefits, and regardless, any wages earned from her work for Caring People were "minimal." She further

---

[2] The Board corrected the determination to reflect claimant filed a benefits claim on "April 11, 2021 which established a weekly benefit rate of $198," and noted an error in the chart of claims, which should have reflected 2022. These changes are not the subject of this appeal.

argues any inaccuracy in her submission must be forgiven as the product of her good faith mistake. Claimant also contends she relied on guidance from the unemployment office and her employer, Caring People, asserting neither intervened to correct any error for months, furthering any misapprehension she may have held concerning her right to benefits.

We assess claimant's arguments under our well-settled standards for reviewing agency determinations. When reviewing unemployment benefits determinations, we afford special deference to the Board's expertise in administrating the Unemployment Compensation Act, N.J.S.A. 43:21-1 to -71, Brady v. Bd. of Rev., 152 N.J. 197, 210-11 (1997), and we will not reverse unless its decision is "arbitrary, capricious, or unreasonable or . . . not supported by substantial credible evidence in the record," In re Ambroise, 258 N.J. 180, 197 (2024) (omission in original) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). Indeed, "[i]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether [we] would come to the same conclusion if the original determination was [ours] to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady, 152 N.J. at 210 (first alteration in original) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)) (internal quotation marks omitted). The burden

to show an agency's abuse of discretion "is on the challenger." <u>Parsells v. Bd. of Educ. of Borough of Somerville</u>, 472 N.J. Super. 369, 376 (App. Div. 2022).

Critically, N.J.S.A. 43:21-16(d)(1) requires the full repayment of unemployment benefits received by an individual who for any reason, including fraud, was not entitled to those benefits. <u>See, e.g.</u>, <u>Malady v. Bd. of Rev.</u>, 76 N.J. 527, 531 (1978); <u>Bannan v. Bd. of Rev.</u>, 299 N.J. Super. 671, 674 (App. Div. 1997). Indeed, the obligation to repay is unaffected by the good faith of the claimant. <u>Bannan</u>, 299 N.J. Super. at 674. If, however, a claimant obtains benefits fraudulently, an employee may be further required: (1) to refund all benefits received, including those to which the employee was entitled, <u>Malady</u>, 76 N.J. at 531 (interpreting N.J.S.A. 43:21-16(d)); (2) to pay a fine equal to twenty-five percent of the amount fraudulently obtained, N.J.S.A. 43:21-16(a)(1); and (3) to be disqualified from receiving benefits for one year, N.J.S.A. 43:21-5(g)(1).

We have reviewed the record under the applicable law and discern no reversible error in the Board's affirmance of the Appeal Tribunal's finding claimant was required to repay the benefits she received. Reimbursement would be reasonable and required regardless of fault or intent. <u>Bannan</u>, 299 N.J. Super.

at 674. We are not convinced the Board acted arbitrarily or unreasonably in finding claimant liable to refund benefits to which she was not entitled.

We are unpersuaded the Board's finding of fraud lacked sufficient support in the record. The Appeal Tribunal, after a full hearing, provided its reasons, anchored in the testimony and evidence, for concluding claimant falsely reported earning no wages on seventy-nine occasions, while admittedly simultaneously receiving wages for her employment at Caring People. The record also supported the Appeal Tribunal's findings, accepted by the Board, that claimant's affirmatively reporting earnings on several occasions, albeit inaccurately, reflected claimant's knowledge of her obligation to report wages she received from whatever source.

Significantly, sufficient evidence supports the conclusion claimant repeatedly encountered a relevant written fraud warning when recertifying her claim, which boldly alerted her that failure to report income while collecting unemployment benefits constituted a crime. The evidence demonstrated that each time claimant was alerted, she affirmatively "clicked" to acknowledge her receipt of the warning and then proceeded to omit any report of her weekly earnings from Caring People. As noted by the Appeal Tribunal, the certification asked of claimant the same direct and unambiguous "generic" question each

11

time—whether she "work[ed] during the weeks claimed"—and did not specify or imply any limitation to a particular employer. Accordingly, we will not disturb the Board's determination, resting on sufficient evidence that claimant's benefits were derived from false or fraudulent representations barring claimant from eligibility for one year.

For these reasons, we also reject claimant's argument the Board's decision to impose a fine was improper in these circumstances. N.J.S.A. 43:21-16(a)(1) provides:

> Whoever makes a false statement or representation, knowing it to be false, or knowingly fails to disclose a material fact, to obtain . . . any benefit . . . shall be liable to a fine of 25% of the amount fraudulently obtained.

The Board acted within its statutory authority in assessing the fine upon its determination claimant made knowing material omissions from her certifications.

To the extent we have not addressed any of claimant's remaining arguments, we determine they lack sufficient merit to warrant discussion in a written decision. R. 2:11-3(e)(1)(D). We note only that we have considered claimant's argument she was approved for PUA. However, she presents no factual or legal support for this claim, nor did she present any evidence before

the Appeal Tribunal or Board on this issue. We are certainly cognizant of the pandemic-related hardships acutely encountered by health care professionals, particularly those with personal health concerns. However, on the record before us, we have no basis upon which to conclude claimant was somehow approved for PUA or was otherwise eligible for PUA in some way that might undermine the Board's otherwise sound determination.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3364-23